**Bobby Cornelious RHODES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 309–96.

Court of Criminal Appeals of Texas.

April 30, 1997.

Terry M. Casey, Fort Worth, for appellant.

C. James Gibson, Assistant District Attorney, Fort Worth, Matthew Paul, Austin, for state.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

MANSFIELD, Judge.

Appellant, Bobby Cornelius Rhodes, was found guilty by a Tarrant County jury of the offense of possession of a controlled substance (cocaine) with intent to deliver. *See* Tex. Health & Safety Code § 481.112. The jury assessed appellant's punishment at imprisonment for 99 years. The Second Court of Appeals affirmed appellant's conviction and sentence, holding appellant was not under arrest when he dropped the cocaine in the police officer's presence and therefore the cocaine was not inadmissible as the fruit of an illegal, warrantless arrest. *Rhodes v. State*, 913 S.W.2d 242 (Tex.App.–Ft. Worth 1995). We granted appellant's petition for discretionary review to determine whether the court of appeals erred in holding the trial court did not err in denying appellant's motion to suppress evidence based on the Fourth Amendment. *See* Tex.R.App.Proc. 200(c)(2). We will affirm.

At the hearing on his motion to suppress the cocaine, appellant argued that the cocaine was discovered only after he was illegally arrested. Appellant averred the arrest was illegal because the police officer (Sergeant McGuirk) never articulated facts or circumstances that gave him probable cause to make the arrest. Therefore, the cocaine should be suppressed as the "fruit of the poisonous tree." The trial court overruled appellant's motion, finding appellant's detention as a valid warrantless arrest based on probable cause.

During the evening of April 20, 1994, Fort Worth Police Sergeant McGuirk and Officer Shunk, both of whom were assigned to the gang task force patrol, were on patrol on the east side of Fort Worth. About 11:00 PM, they observed a 1983 Oldsmobile back through an intersection near the 4000 block of Fitzhugh Street. That part of Fort Worth was known as a high-crime area full of gang activity. Officer Shunk, who was driving the patrol car, turned on his overhead lights in order to stop the Oldsmobile for the traffic violation.

Instead of pulling over, the driver of the Oldsmobile sped off. During the chase, both officers testified, they observed the passenger door of the Oldsmobile open, and the passenger subsequently dropped a Crown Royal bag onto the street. Sergeant McGuirk testified they stopped briefly, picked up the bag and, without opening it to determine its contents, resumed the chase. Both officers testified Crown Royal bags are commonly used to carry drugs.

Eventually, the Oldsmobile stopped in a northbound lane of Donnelly Street. The driver exited the car and fled; Office Shunk pursued him on foot. Appellant, the passenger, remained in the car. Appellant identified himself to Sergeant McGuirk and told Sergeant McGuirk he did not know who the driver was. Sergeant McGuirk testified he was concerned about his safety and the safety of his partner, who was still in foot pursuit of the driver, so he handcuffed appellant and walked him to the patrol car. Officer Shunk testified it was standard procedure to handcuff an individual under circumstances like those then present—it was nighttime, lighting was poor, a chase was underway leaving the police officer alone with the individual, the suspicious activities which had taken place prior to that point in time—which would indicate that his safety would be best protected by employing his handcuffs.

Sergeant McGuirk testified at the suppression hearing he did not place appellant under arrest at that time, but cuffed him only "to investigate what was going on." He did state he could have placed appellant under arrest for littering based on his throwing the Crown Royal bag onto the street, but elected not to do so. He testified further he observed appellant dropping a clear plastic bag to the ground as they walked to the patrol car. He subsequently picked up the bag, which contained several smaller bags that contained what appeared to be crack cocaine. Sergeant McGuirk testified he then placed appellant under arrest for possession of a controlled substance.[1] A subsequent search

---

1. Officer Shunk had, by then, returned to the scene, having been unable to capture the driver.

The Crown Royal bag was discovered to contain $321 in one-dollar bills, but no drugs. The plas-

of appellant at the jail uncovered another bag in his pocket which contained a white residue.

The Fourth Amendment does not forbid "all searches and seizures, but unreasonable searches and seizures." *Elkins v. United States,* 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960). The Supreme Court has held police officers may stop and briefly detain persons reasonably suspected of criminal activity even if probable cause to arrest is not then present. *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). This Court has held that passengers in an automobile are subject to temporary investigative detentions in the same manner as pedestrians. *Gearing v. State,* 685 S.W.2d 326, 328 (Tex.Crim.App.1985) (op. on reh'g.). *See also, Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

The Ninth Circuit Court of Appeals recently held that police officers may ask passengers to exit a vehicle after the officers have stopped the car in order to protect the officers. *Ruvalcaba v. Los Angeles, Ca.,* 64 F.3d 1323 (9th Cir.1995). The court, in effect, found asking the passengers to exit the vehicle was a minimal intrusion on their privacy interests and this intrusion was outweighed by the officers' reasonable concern for their safety. In *Ruvalcaba,* as in the present case, it was the driver, not the passengers, who acted in a threatening manner (by fleeing) or was known to be dangerous.

Professor LaFave has written:

The correct view, then, is that an otherwise valid stop is not inevitably rendered unreasonable merely because the suspect's car was boxed in by police cars in order to prevent it from being moved. Likewise, it cannot be said that whenever police draw weapons the resulting seizure must be deemed an arrest rather than a stop and thus may be upheld only if full probable cause was then present. The courts have rather consistently upheld such police conduct when the circumstances (e.g. suspicion that the occupants of a car are the persons who just committed an armed robbery) indicated that it was a reasonable

precaution for the prevention and safety of the investigating officers. Similarly, handcuffing of the suspect is not ordinarily proper, but yet may be resorted to in special circumstances, such as when necessary to thwart the suspect's attempt "to frustrate further inquiry."

3 LaFave, *Search and Seizure,* Sec. 9.2(d), 364 (1987). *See also,* 4 LaFave, *Search and Seizure,* Sec. 9.2(d), 36–38 (1996).

■ Thus, officers may use such force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety. *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *United States v. Weaver,* 8 F.3d 1240 (7th Cir.1993); *Ruvalcaba, supra; Holladay v. State,* 805 S.W.2d 464 (Tex.Crim. App.1991). We have held that we will follow the federal *Terry* standard with respect to temporary investigative stops and have found no reason to employ a more stringent standard under the Texas Constitution with respect to such stops. *Davis v. State,* 829 S.W.2d 218 (Tex.Crim.App.1992).

■ At the suppression hearing, Sergeant McGuirk testified he was not arresting appellant when he handcuffed him. The officer's testimony is a factor to be considered, along with the other facts and circumstances of the detention, in determining whether an arrest has taken place. *Amores v. State,* 816 S.W.2d 407, 412 (Tex.Crim.App.1991).

Sergeant McGuirk also testified he placed handcuffs on appellant primarily out of concern for his safety, based on the circumstances: it was dark; the area was a high-crime location; the officers had just concluded a car chase which was initiated due to commission of a traffic violation and during which a bag was dropped from the car; and, his partner was chasing the driver, leaving Sergeant McGuirk alone with the suspect. In *Mays v. State,* 726 S.W.2d 937 (Tex.Crim. App.1986), *cert. denied,* 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1020 (1988), we held that an officer's conduct in handcuffing two men did not amount to an arrest and was reasonable under the circumstances as a

___

tic bag dropped by appellant at the scene was determined to contain 2.09 grams of cocaine;

the bag taken from appellant at the jail did not contain any controlled substances.

temporary investigative detention. In *Mays*, a lone police officer arrived at the scene of a possible burglary. He observed two men in front of the door. The officer informed the two men he would have to frisk them, which he subsequently did. He then handcuffed them. The officer testified he handcuffed them for his own protection, "due to the nature of the call and the way they were acting scared like maybe they had been caught at something, and I was alone, and two of them, and they was [sic] both bigger than I was." *Mays, supra*, at 942. We held that the officer's actions were reasonable and justified under the circumstances, as the facts demonstrated reasonable suspicion rapidly escalating to probable cause for an arrest. *Mays, supra*, at 944.[2]

■ The court of appeals in the present case properly found erroneous appellant's assertion that there is a bright-line test providing that mere handcuffing is always the equivalent of an arrest. "Much as a 'bright-line rule' would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria." *Rhodes*, 913 S.W.2d at 248, citing *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

■ The court of appeals, relying on other cases decided by the Supreme Court, found that the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical definition. "Reasonableness" must be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight. Furthermore, allowances must be made for the fact that officers must often make quick decisions under tense, uncertain and rapidly

changing circumstances. *Rhodes, supra*, at 249, citing *Terry v. Ohio, supra; Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The court of appeals' conclusion that Sergeant McGuirk made a temporary investigative detention of appellant under *Terry* (and its progeny) that was reasonable and justified under the circumstances surrounding the detention is soundly based on applicable case law.[3]

Recently the United States Supreme Court held:

[D]anger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.

*Maryland v. Wilson*, —— U.S. ——, ——, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997).

The Supreme Court noted the large number of assaults on police officers during traffic stops and the fact that passengers in the car have greater access to possible weapons concealed in the vehicle—thereby increasing the threat to police officers—than they would have if standing outside the vehicle. The Court noted further the passengers are already stopped and extending the rule of *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1997) (an officer may as a matter of course order the driver of a lawfully stopped vehicle to exit his vehicle)

---

**2.** Several federal courts have held an officer may handcuff an individual being detained when he reasonably believes it is necessary to do so to protect himself. *United States v. Smith*, 3 F.3d 1088, 1094–1095 (7th Cir.1993), *cert. denied*, 510 U.S. 1061, 114 S.Ct. 733, 126 L.Ed.2d 696 (1994); *United States v. Sanders*, 994 F.2d 200, 205–208 (5th Cir.), *cert. denied*, 510 U.S. 955, 114 S.Ct. 408, 126 L.Ed.2d 355, 510 U.S. 1014, 114 S.Ct. 608, 126 L.Ed.2d 572 (1993); *United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir.1993); *Ruvalcaba, supra*.

**3.** We note the court of appeals disagreed with the trial court's finding that appellant's detention

was a warrantless arrest based on probable cause. However, the court of appeals cited *Romero v. State*, 800 S.W.2d 539 (Tex.Crim.App. 1990) and found that since appellant's detention was a valid temporary investigative detention, and the subsequently discovered cocaine was thus admissible, the trial court's ruling stood even though that theory of law, applicable to the case, was not argued before the trial court. *Romero, supra*, at 543; *McFarland v. State*, 845 S.W.2d 824, 846 n. 15 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

to cover passengers is not an unreasonable violation of their rights under the Fourth Amendment.

Appellant's ground for review is overruled and the judgment of the court of appeals is affirmed.[4]

MEYERS, Judge, concurs and dissents.

The majority does a fine job of explaining why, for constitutional purposes, handcuffing is not always the equivalent of an arrest. To this limited extent, I concur in the majority's opinion. Unfortunately, this only partly addresses the question upon which we granted review, which is:

> Did the court of appeals err in affirming the trial court's denial of appellant's motion to suppress evidence?

That the majority misconstrues the question in this case is understandable. In urging this petition for discretionary review, appellant no doubt argues that he was arrested without probable cause when he was handcuffed and led to the back of the patrol car. This, however, does not mean that appellant's argument is that he was unlawfully arrested solely *because* he was handcuffed. In fact, appellant repeatedly refers to the totality of the circumstances in concluding that he was unlawfully arrested, including the fact that "in the instant case, the officer conducted no investigation, and indeed passed up opportunities to investigate, prior to seizing [a]ppellant and handcuffing him."

In answering the question upon which we granted review, we address the court of appeals' opinion, which, although concluding that the trial court did not abuse its discretion in overruling appellant's motion to suppress, nevertheless "disagree[d] . . . with the trial court's characterization of Rhodes' detention as a warrantless arrest based on

probable cause." Instead, the court of appeals deemed appellant's detention an investigatory stop supported by reasonable suspicion. Thus, the question before us is really quite fundamental: Was appellant arrested, for which the police need probable cause, or was he merely stopped for the purpose of investigation?

In order to answer this, we must set out the difference between an arrest and an investigatory stop under the United States Constitution.[1] Both the court of appeals and the majority correctly note that our law does not require the finding of an arrest whenever an accused is handcuffed. Indeed, such a bright-line rule would hardly comport with recent Supreme Court case-law emphasizing the importance of police officer safety. *Maryland v. Wilson*, —— U.S. ——, ——, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997). In *Maryland*, the Supreme Court held that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop" without offending the Fourth Amendment. *Id.* Our Court has long recognized that officer safety ought be considered when defining the parameters of the Fourth Amendment. As the majority notes, we have held that a "lone officer'[s]" conduct in handcuffing "two men, both larger than he, and suspected of burglary" did not amount to an arrest. *Mays v. State*, 726 S.W.2d 937, 944 (Tex.Crim.App.1986).

But the majority fails to acknowledge that whether a detention is an arrest or an investigatory stop turns, in large part, upon whether an investigation has occurred. In *United States v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985), the Supreme Court stated:

---

4. The concurring and dissenting opinion would have us remand this case to the court of appeals for a determination as to whether the handcuffing of appellant was pursuant to a temporary investigative detention (or stop). The opinion strongly implies that a detention is not a valid investigatory detention unless the officer *first* asks questions of the detainee. We reject this implication as the facts and circumstances—as in the present case—can establish a detention as investigatory without such questioning. Furthermore, the detention in the present case was not

violative of the Fourth Amendment as it was a reasonable use of force intended to protect the officer's safety. *U.S. v. Sokolow, supra; Maryland v. Wilson, supra.*

1. Although appellant moved to suppress the cocain evidence under both the United States Constitution and the Texas Constitution, we will limit our review to the federal constitutional issue because that is the only issue addressed by the court of appeals.

In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly.

Of course, a *quick* investigation presupposes an investigation.[2] This Court has cited the necessity of an investigation to an investigatory stop in even more direct terms. *Amores v. State,* 816 S.W.2d 407 (Tex.Crim. App.1991). The police officer in *Amores* blocked appellant's automobile with his patrol car, ordered appellant out of his car and, once appellant complied, "ordered him to lie face down on the parking lot with his hands behind him." *Id.* at 412. We held the encounter an arrest, despite the officer's characterization of it as an investigatory detention. *Id.* In so doing, we held that "the officer's opinion is a factor to be considered, along with the other facts and circumstances of the detention, in determining whether an arrest has taken place." We went on to state that:

> The investigative detention contemplated by *Terry v. Ohio,* 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968), is one during which the police are allowed to briefly question a suspicious person respecting his identity, his reason for being in the area or location, and to make similar reasonable inquiries of a truly investigatory nature. Here, no such investigation was conducted and the *detention can by no means be characterized as investigatory* within the meaning of *Terry v. Ohio.*

*Id.* (emphasis added). Thus, the existence of an investigation is not just one factor in a "totality of circumstances", but, rather, is a dispositive factor in determining whether a detention could be deemed an investigatory

stop. In other words, and as we have explicitly stated in *Burkes v. State,* 830 S.W.2d 922, 925 (Tex.Crim.App.1991), if the officer(s) conducted no *investigation by questioning,* the detention *cannot* be considered investigatory (emphasis added).[3] Of course, when an investigation *has* occurred, we look to all the other factors in order to define the detention as either an arrest or an investigatory stop, including, for example, the type and extent of the force used to restrain the suspected individual, issues connected with officer safety and the opinion of the restraining officer.

Despite the existence of both *Amores* and *Burkes,* the court of appeals in this case did not assess whether an investigation by questioning occurred and did not account for that finding in its determination of whether appellant was arrested. *See Arcila v. State,* 834 S.W.2d 357 (Tex.Crim.App.1992). This case should be remanded to the court of appeals for a determination on this potentially pivotal issue. *See Amores* and *Burkes.*

Because the majority does not do so, I must respectfully dissent.

---

2. In other words, the very term "investigatory stop" confirms that the detention must be investigatory in nature.

3. Recognizing the existence of an investigation as a dispositive factor not only comports with the term "investigatory stop", but also reconciles the results in *Mays, Amores* and *Burkes* because in *Mays* the officer conducted an extensive investigation. None of these cases, however, require that, in order to be deemed an investigatory stop,

the officer must first ask questions of the detainee. In fact, the investigation in *Mays* involved, to a large extent, the questioning of a complaining witness. *Mays v. State,* 726 S.W.2d 937, 943 (Tex.Crim.App.1986). To the extent that the majority asserts that a detention can be deemed investigatory when *nobody* is asked questions of an investigatory nature, it disregards the law as stated in *Burkes* and *Amores.*