*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



★ ★ ★ ★  ★ ★ ★ ★

## OPINION

No. 04-11-00312-CR

Alejandro **CASTRO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2010CR12777A
Honorable Juanita A. Vasquez-Gardner, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Rebecca Simmons, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  April 4, 2012

AFFIRMED

After the trial court denied his motion to suppress, appellant Alejandro Castro pled *nolo contendere* to two counts of second-degree robbery.[1]  The trial court sentenced Castro to five years imprisonment and imposed a $1,500.00 fine.  On appeal, Castro challenges the denial of his motion to suppress, contending his arrest was unlawful.  We affirm the trial court's judgment.

---

[1] Despite his plea, Castro is entitled to appeal the denial of his motion to suppress.  *See* TEX. R. APP. P. 25.2(2)(A) (stating that in plea bargain case, defendant may appeal matters raised by written motion filed and ruled on before trial).

**BACKGROUND**

The evidence shows that in September 2010, David Martinez and Joseph Zamarippa were waiting for a bus outside Travis Park in downtown San Antonio. As they waited, a group of young men approached and demanded Martinez's wallet and Zamarippa's skateboard. The testimony showed Zamarippa gave the men the skateboard, but Martinez attempted to walk away. As Martinez walked away, one of the men threatened to hit Martinez with the skateboard if he refused to turn over his cell phone. Despite the threat, Martinez refused to turn over his wallet or his cell phone. After Martinez refused, he was hit over the head with the skateboard, knocked to the ground, punched, and kicked. One of the men took Martinez's wallet. Zamarippa was also attacked but was able to escape.

Officer Glenn Barrow, a seventeen-year veteran of the San Antonio Police Department, was on bike patrol near Travis Park. While he was writing a citation in an unrelated matter, Zamarippa approached and told Officer Barrow there was a fight in Travis Park. After he finished writing the citation, Officer Barrow headed toward Travis Park.

On his way to the park, Officer Barrow saw two "Latin" men heading away from the park. Both men were wearing white t-shirts, and one was holding a skateboard. Officer Barrow stated that when he first saw the men, he had no reason to believe they were involved in any "wrongdoing." As the officer approached the park, an unidentified man stopped him, stating four "Latin" men, two wearing white t-shirts and two wearing black t-shirts, were "beating up a man in the park." The witness described the men and indicated one of the men in white was carrying a skateboard. Realizing the description he received matched the two men he had seen on his way to the park, Officer Barrow turned around and attempted to find the men in the white t-shirts; however, he was unsuccessful.

Almost immediately thereafter, Officer Barrow saw two "Latin" men wearing black t-shirts. The men matched the description given to him by the unidentified witness. Officer Barrow stopped the men and placed them in handcuffs. He identified the men as Edward Hinojosa and Jonathan Vasquez. Officer Barrow called for additional officers to assist him, and remained with Hinojosa and Vasquez until other officers arrived.

After officers arrived and took Hinojosa and Vasquez into custody, another officer went to Travis Park to see if he could find the victim, Martinez. Martinez was found nearby, and Officer Barrow headed over to speak to him. While on his way to speak to the victim, Officer Barrow passed a restaurant and just happened to look inside. Through the window he saw one of the "Latin" men he had seen earlier. Officer Barrow went inside the restaurant. He stated the man was still wearing a white t-shirt and carrying a skateboard. He also stated the man matched the description given by the unidentified witness. Officer Barrow spoke to the man who was identified as Alejandro Castro. When asked if Castro was under arrest, Officer Barrow stated "[h]e was detained until I found out what exactly was going on." Officer Barrow took Castro outside. When a San Antonio Park Police Officer arrived at the restaurant, he placed Castro in handcuffs.

Once Castro was handcuffed and detained, Officer Barrow went back inside to look for the second "Latin" male in a white-t-shirt. Officer Barrow did not see the man, but the restaurant manager pointed toward the restroom. Officer Barrow went to the restroom, knocked on the door and identified himself. Officer Barrow ordered the individual out of the restroom. The man was now wearing a black t-shirt, but Officer Barrow stated he saw a white t-shirt next to a backpack at the table where Castro had been sitting. The second man refused to identify himself, but was later determined to be Victor Ruiz. Officer Barrow found the victim's wallet in Ruiz's

pocket. Officers inventoried the backpack, and both Castro and Ruiz were taken separately to where the other two "Latin" males in black t-shirts were being detained.

Martinez, the victim, spoke to officers and reported he was robbed by four "Latin" males. Martinez told officers all four men hit, kicked, and beat him with a skateboard. Martinez stated two of the men took the skateboard with them when they left.

A detective with the San Antonio Police Department conducted one-on-one line-ups in the field. Martinez and Zamarippa positively identified Hinojosa, Vasquez, Ruiz, and Castro as the four men who beat and robbed them. Zamarippa stated the skate board taken by the men was his, and Martinez identified the wallet found in Ruiz's pocket. The property was returned to the victims.

On cross-examination, Officer Barrow stated the men were placed in handcuffs "for my safety and theirs." He specifically denied he had "immediately arrested them," but stated he "detained them." Officer Barrow admitted he wrote in his report that he placed Castro "under arrest," but explained that it was a detention because it was "not final." Officer Barrow admitted the men followed his instructions and never attempted to flee after they were detained.

On redirect, Officer Barrow explained his intent was to detain Castro and "further investigate his involvement, if any." Officer Barrow testified that roughly twenty-five minutes had elapsed from the first report of the fight until the time he detained Castro.

Castro was ultimately indicted for second-degree robbery. He filed a motion to suppress. After an evidentiary hearing, the trial court denied the motion to suppress. Once the motion was denied, the parties entered into a plea pursuant to which Castro pled *nolo contendere* to second-degree robbery. Castro requested the trial court make findings of fact and conclusions of law, which the court issued. He then perfected this appeal.

## ANALYSIS

In his single point of error, Castro maintains the trial court erred in denying his motion to suppress the evidence obtained by officers after he was detained by Officer Barrow, including the on-site identification by the victim. He argues his detention was, in actuality, an unlawful warrantless arrest, and therefore, all evidence obtained after the arrest should have been excluded.

### *Standard of Review*

We review the trial court's ruling on a motion to suppress under the abuse of discretion standard and overturn the trial court's ruling only if it falls "outside the zone of reasonable disagreement." *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011); *accord Arizpe v. State*, 308 S.W.3d 89, 91 (Tex. App.—San Antonio 2010, no pet.). We further apply a bifurcated standard of review, according almost total deference to the trial court to determine historical facts and those facts which depend upon witness credibility. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We review a trial court's legal conclusions, and facts that do not depend on witness credibility, under a de novo standard of review. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

When, as in the case before us, the trial court enters findings of fact after denying a motion to suppress, we must determine whether the evidence supports those facts by viewing the evidence in favor of the trial court's ruling. *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009) (citing *Kelly*, 204 S.W.3d at 818). Furthermore, we review the trial court's conclusions of law de novo, upholding the ruling if it is supported by the record and falls under any correct legal theory applicable to the case. *State v. Iduarte*, 268 S.W.3d 544, 549 (Tex. Crim. App. 2008); *Beechum v. State*, 346 S.W.3d 5, 8 (Tex. App.—San Antonio 2011, no pet.).

*Application*

We must first determine whether the detention in this instance amounts to an arrest, or was merely an investigatory detention, because the nature of the detention determines the applicable constitutional parameters. *See Amores v. State*, 816 S.W.3d 407, 411 (Tex. Crim. App. 1991). The amount of information required for law enforcement to stop and detain an individual for investigative purposes is less than what is constitutionally required for probable cause to arrest an individual. *See id.*

An investigative detention is a seizure, but is characterized by a lesser amount of restraint on an individual. *See Berkemer v. McCarty*, 468 U.S. 420, 437–40 (1984); *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). An investigative detention occurs when an individual is temporarily detained by law enforcement officials for purposes of an investigation. *State v. Garcia*, 25 S.W.3d 908, 911 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995)). To detain an individual for investigatory purposes, i.e., without a warrant, a police officer need only have a reasonable, articulable suspicion that the individual has been, or soon will be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). This is an objective standard that disregards any subjective intent of the officer making the stop, and therefore we consider only whether an objective basis for the stop exists. *Id.* In making a determination as to the existence of reasonable suspicion, we consider the totality of the circumstances. *Id.* at 492–93.

An arrest, however, imposes a greater degree of restriction on an individual's freedom of movement than an investigatory detention. *State v. Sheppard*, 271 S.W.3d 281, 290 (Tex. Crim. App. 2008). Accordingly, an arrest must be justified by probable cause as opposed to reasonable suspicion. *Amores*, 816 S.W.2d at 411.

To determine whether a detention is merely for investigatory purposes or amounts to an arrest, Texas courts use a totality of the circumstances approach. *Sheppard*, 271 S.W.3d at 291; *Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007). In making this determination, courts are to consider:

> [T]he amount of force displayed, the duration of a detention, the efficiency of the investigative process and whether it is conducted at the original location or the person is transported to another location, the officer's expressed intent—that is, whether he told the detained person that he was under arrest or was being detained only for a temporary investigation, and any other relevant factors.

*Sheppard*, 271 S.W.3d at 291.

When reviewing the amount of force utilized, we look to the reasonableness of the officer's actions from the perspective of the officer present at the scene. *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997). In evaluating the type of detention associated with handcuffing, a bright-line test is rejected in favor of allowing "ordinary human experience to govern." *Id.*

Officer Barrow stated that after identifying Castro at the restaurant, he walked Castro outside and another officer placed Castro in handcuffs. Officer Barrow testified the handcuffs were necessary for the safety of both Castro and himself. Officers are permitted, for investigative purposes or personal safety, to use reasonable force to effectuate the goal of the stop. *See Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002).

An individual may be placed in handcuffs, especially for safety purposes, to further the purpose of the investigatory stop. *Mays v. State*, 726 S.W.2d 937, 942–44 (Tex. Crim. App. 1986); *see Rhodes*, 945 S.W.2d at 117–18. In *Mays*, the court found an investigative detention occurred where a single officer detained and subsequently handcuffed two individuals for his own protection. 726 S.W.2d at 943. Considering Officer Barrow was presented with a similar

situation as the officer in *Mays*, it cannot be said the trial court erred in concluding Officer Barrow's actions were reasonably necessary to guarantee his safety while further investigating Castro's involvement in the Travis Park fight. *See id.* at 942–44; *cf. Balentine*, 71 S.W.3d at 771 (investigative detention occurred where individual was escorted to patrol car and handcuffed). In contrast, a situation where an officer "blocked the appellant's car in the parking lot, drew his service revolver, ordered the appellant from his car at gunpoint, ordered him to lie face-down on the pavement with his hands behind his back, and told him he would be shot if he did not obey these orders," an arrest occurred. *Amores*, 816 S.W.2d at 411–12. Considering Officer Barrow only maintained access to a bike as opposed to a patrol vehicle, as well as the other circumstances, we cannot say the use of handcuffs in this instance was unreasonable. *See Rhodes*, 945 S.W.2d at 117–18.

We turn now to the length of Castro's detention. A detention's duration must demonstrate the officers efficiently pursued an investigation to confirm or dispel their suspicions. *E.g.*, *Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997); *Renteria v. State*, 989 S.W.2d 114, 119 (Tex. App.—San Antonio 1999, pet ref'd). In the present case, Officer Barrow's testimony showed Castro's detention lasted approximately twenty-five to forty-five minutes, although an exact time frame was uncertain. This was not an unreasonable amount of time under the circumstances, i.e., the officer had to go inside the restaurant to find and detain the second suspect, and then transport both suspects to the park for the on-site identification. *See Balentine*, 71 S.W.3d at 770 n.7 (concluding detention lasting less than one hour reasonable). We agree with the trial court's findings that Castro's detention permitted the complainant to arrive on the scene, the CID detective to be contacted, and allowed a line-up to be conducted. When reviewing the totality of the circumstances, Officer Barrow briefly detained Castro, "a person

reasonably suspected of criminal activity," for a period merely long enough to engage in an investigatory procedure. *See id.* (concluding investigative detention occurred where suspect was "sitting in the back of a patrol car," for a period of time after "being handcuffed and then frisked"); *see also Paulea v. State*, Nos. 04-09-00293-CR, 04-09-00294-CR, 04-09-00295-CR, 2010 WL 1068176, at *7 (Tex. App.—San Antonio Mar. 24, 2010, pet. ref'd) (mem. op., not designated for publication) (handcuffing suspect allowed officers to efficiently inspect scene in order to conduct a thorough investigation).

With regard to transportation, the record indicates Castro was taken from the restaurant to the other suspects' location to allow Zamarippa and Martinez the opportunity to identify the four suspects together. Moving a suspect a short distance to further an investigation is consistent with an investigatory detention's purpose. *Compare Francis v. State*, 922 S.W.2d 176, 180 (Tex. Crim. App. 1996) (Baird, J., concurring and dissenting) (moving individual short distance to scene of crime furthered investigation), *with Delk v. State*, 855 S.W.2d 700, 712 (Tex. Crim. App. 1993) (determining arrest occurred where suspects were "handcuffed, read their *Miranda* rights, and taken to police station"). Because Officer Barrow transported the individuals around the block for identification purposes, the move from the original location reasonably furthered the investigation while still providing for officer safety.

Finally, we must examine the officer's intent with regard to the detention in question. *See Sheppard*, 271 S.W.3d at 291. Officer Barrow testified he detained Castro in handcuffs so he could find out "exactly what was going on." When prompted, Officer Barrow indicated that although he informed Castro he was "under arrest," Officer Barrow would not walk around saying "you're under detention" to suspects in detention. *See id.*; *see also Smith v. State*, 219 S.W.2d 454, 456 (Tex. Crim. App. 1949) ("The mere fact that an officer makes the statement to

an accused that he is under arrest does not complete the arrest."); *Burkhalter v. State*, 642 S.W.2d 231, 232 (Tex. App.—Houston [14th Dist.] 1982, no pet.) (holding arrest did not occur where appellant was handcuffed and told he was under arrest). Officer Barrow's testimony establishes the detention was an effort to further investigate the situation, despite his statement to Castro. *See Burkes v. State*, 830 S.W.2d 922, 925 (Tex. Crim. App. 1991) (indicating officer's opinion "must certainly be considered persuasive").

After reviewing the evidence under the appropriate guidelines and standard of review, we cannot say the trial court erred in concluding Officer Barrow engaged in an investigative detention rather than an arrest. The evidence in the record shows the amount of force used by Officer Barrow was reasonable, considering his status as a bike patrolman, the potential to be outnumbered by suspects at a ratio of two to one, and the receipt of information from two informants as to the possible violent nature of the suspects. Castro's detention, which lasted under one hour, falls within the zone of reasonableness contemplated by the court of criminal appeals. And, although officers transported Castro to another location, the distance was minimal and furthered the investigatory purpose of the stop. Finally, Officer Barrow's testimony that it was an investigatory detention, despite his statement to Castro, provides additional support for the trial court's conclusion that an investigatory detention, rather than an arrest, occurred. The officer explained his use of the word "arrest" when speaking to Castro, stating he would not inform an individual that he was "under detention."

Because Castro was merely detained for investigatory purposes and was not actually arrested until after he was identified by Martinez, Officer Barrow needed only reasonable suspicion, not probable cause, to detain Castro. *See State v. Elias*, 339 S.W.3d 667, 674 (Tex.

Crim. App. 2011) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). We now determine if Officer Barrow had reasonable suspicion to detain Castro.

Reasonable suspicion exists when an officer has "specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.* The trial court's relevant factual findings, to which we must defer, state Officer Barrow received information from two informants as to a possible criminal incident occurring in Travis Park. *See Amador*, 221 S.W.3d at 673. We hold the informants' descriptions of the four suspects, accompanied by Officer Barrow's own observations of men matching the given descriptions, provided ample information and warranted further investigation in the alleged crime area. *See Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) ("The police officer must have some minimal level of objective justification for making the stop." (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Officer Barrow relayed to the trial court his observation of the suspects' perspiration consistent with physical activity such as a fight, the proximity of the suspects to the crime scene, and Castro's association with an individual attempting to hide in the bathroom to distort his appearance. In addition, the trial court found Officer Barrow's identification of Castro occurred mere minutes after the informant provided Castro's description, and merely a block away from the crime scene. Based on these circumstances, it was not unreasonable for the trial court to conclude Officer Barrow possessed the requisite amount of information to lawfully detain Castro. Accordingly, we hold the trial court did not err in refusing to exclude the evidence obtained from the stop.

Castro contends the officer's investigative techniques failed to amount to an investigatory detention due to the absence of explicit questioning. However, "facts and circumstances . . . can

establish a detention as investigatory without such questioning." *Rhodes*, 945 S.W.2d at 119 n.4. Making "reasonable inquiries of a truly investigatory nature" such as collaborating with additional officers, contacting the Criminal Investigation Division, and providing for an identification line-up demonstrate reasonable investigation by the officers. *See Amores*, 816 S.W.2d at 412. Therefore, the lack of express questioning by the officers does not transform an otherwise investigatory detention into an arrest. *See, e.g.*, *Morris v. State*, 50 S.W.3d 89, 98 (Tex. App.—Fort Worth 2001, no pet.) ("No verbal questions were necessary to effectuate the purpose of [the] temporary detention."); *Zayas v. State*, 972 S.W.2d 779, 790 (Tex. App.—Corpus Christi 1998, pet ref'd) ("An investigating officer does not necessarily need to ask questions of a suspect before restraining him, so long as some investigation coincides with the restraint.").

## CONCLUSION

After reviewing the record under the proper standard of review, we find the trial court did not err in denying Castro's motion to suppress. The evidence supports the trial court's conclusion that Officer Barrow conducted an investigatory detention, not an arrest. Further, the evidence supports the trial court's conclusion that Officer Barrow had reasonable suspicion to detain Castro. Accordingly, we overrule Castro's point of error and affirm the trial court's judgment.

Marialyn Barnard, Justice

Publish