

# NUMBER 13-20-00181-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

JOSHUA HUIZAR,                                                                         Appellant,

v.

THE STATE OF TEXAS,                                                                   Appellee.

---

### On appeal from the County Court at Law No. 11
### of Bexar County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva
Memorandum Opinion by Justice Silva**

Appellant Joshua Huizar appeals his conviction of assault causing bodily injury,

family violence, a Class A misdemeanor.[1] *See* TEX. PENAL CODE ANN. § 22.01(a)(1). By

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. Because this is a transfer case, we are bound to apply the precedent of the transferor court to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

one issue, Huizar argues the trial court abused its discretion in denying his motion to suppress evidence of his statements to officers.[2] We affirm.

## I.    BACKGROUND

At a hearing on Huizar's motion to suppress evidence, San Antonio Police Department (SAPD) Officer Christopher Lloyd testified he was dispatched to an apartment complex on October 22, 2017, following reports of an assault. Officer Lloyd said the information he was provided at the outset had been limited: "There was a person with a broken nose and that was the information."[3]

When Officer Lloyd arrived at the residence, it was approximately 9:40 p.m., and he was greeted at the door by Bertha Miranda.[4] Miranda had blood on her face, neck, and chest. Miranda told Officer Lloyd that Huizar punched her twice, he was upstairs, and he had access to a firearm. At 9:42 p.m., Officer Lloyd entered the residence with his weapon drawn. In a span of two minutes, the following transpired. Officer Lloyd ordered

---

[2] As a preliminary matter, we note that following a hearing on Huizar's motion to suppress evidence, the trial court denied Huizar's motion "as to statements of the defendant up to approximately the 17-minute mark." The record provided on appeal does not contain a video exhibit with a "17-minute mark." Rather, the exhibit recordings of two officer body cameras in evidence have all been severed. Although presented chronologically, the longest video is six minutes and thirty seconds in length. Thus, we construe the trial court's order as suppressing all statements made after 9:55 p.m., seventeen minutes into the first officer's arrival on scene. For this reason, we denote timestamps where appropriate based on the officers' body camera recordings.

[3] Two 9-1-1 call recordings were admitted into evidence at the suppression hearing. In the first recording, Huizar tells the 9-1-1 operator, "I need police now." A woman Huizar later identified as his girlfriend, Bertha Miranda, can be heard repeatedly screaming, "Help me please!" Miranda claimed that Huizar punched her nose, and she was bleeding. Huizar told the 9-1-1 operator that Miranda attacked him, was still "trying to hurt" him, and "hurt herself" trying to get inside the home. Huizar said he had locked himself in a separate room in the home to get away from her. Huizar ignored the operator's inquiries regarding whether he had struck Miranda as she claimed.

In the second recording, Huizar stated he was still waiting for police to arrive, and he claimed his girlfriend "punched" him and was actively "trying to get in [his] room."

[4] Officer Lloyd's body camera footage was admitted into evidence.

2

Huizar to descend the stairs with his hands up. Huizar did not immediately follow Officer Lloyd's commands. Once Huizar began making his way down the stairs, Huizar stated, "Shoot me. I don't give a f-ck, man."[5] Huizar then disregarded Officer Lloyd's commands that he "stop right there and turn around." Officer Lloyd rushed forward and placed handcuffs on Huizar, yelling, "What part of listening [sic] don't you understand? Hands behind your back." Huizar responded, "Calm the f-ck down, man. . . . Dude, she f-cking attacked me." Officer Lloyd replied, "Where's your f-cking wound? Her face is bloody as f-ck," before instructing Huizar to "take a seat" on a couch in the living room at approximately 9:43 p.m.[6]

After Huizar was handcuffed, SAPD Officer Chris Udero[7] remained with Huizar, while Officer Lloyd exited the residence and attempted to speak to Miranda outside. As indicated by Officer Udero's body camera recording, Huizar immediately, without prompting, told Officer Udero that he was "mixing this shit up" and that Miranda had attacked him. Officer Udero replied, "Alright. We'll get it sorted out," and instructed Huizar to "hold on" while he tried to adjust Huizar's handcuffs. Huizar continued to mutter expletives and maintain that he "didn't do shit."

At 9:45 p.m., Officer Udero began questioning Huizar:

---

[5] SAPD Officer Chris Udero arrived at this point to assist Officer Lloyd. Although Officer Udero was not visible on Officer Lloyd's body camera recording, Officer Udero's body camera recording was also admitted as evidence without objection from Huizar and confirmed Officer Udero's presence.

[6] At the hearing, Officer Lloyd testified, "[Huizar] was just being detained while we conducted the investigation for our safety due to the nature of the injuries that were presented and the statements that there was a firearm accessible." Officer Lloyd testified that Huizar's "suicidal ideations" also provided a cause for concern.

[7] Officer Udero was not permitted to testify at the hearing following a finding by the trial court that Officer Udero had "violated 'the rule'" when he conversed with another witness about the case while waiting to testify. *See* TEX. R. EVID. 614.

| | |
|---|---|
| Officer Udero: | Alright so let's start with your name. What's your last name? |
| Huizar: | Joshua Huizar. |
| Officer Udero: | Spell your last name. |
| Huizar: | H-U-I-Z-A-R. |
| Officer Udero: | H-U-R-I-Z-R [sic]? |
| Huizar: | Zar. How come she doesn't have handcuffs? |
| Officer Udero: | Okay. Well, right now— |
| Huizar: | Well, just, the way— |
| Officer Udero: | Listen, Listen— |
| Huizar: | —you handled her. [Inaudible.] |
| Officer Udero: | Okay. |
| Huizar: | Go look at the door. |
| Officer Udero: | Hold on. |
| Huizar: | Dude, she attacked me. |
| Officer Udero: | Okay, listen. Right now her face is busted, okay? |
| Huizar: | Yeah. |
| Officer Udero: | —so it looks like she's a victim, okay? Okay, listen. He's asking her what happened. Once I get the information from you, we're going to ask you what happened, and we're going to put it all together, okay? |
| Huizar: | Okay. |
| Officer Udero: | Alright. But when we got here, uh, you know, you weren't the most cooperative guy. You were upstairs. |
| Huizar: | I came out. |

4

| | |
|---|---|
| Officer Udero: | Okay, you came out but— |
| Huizar: | —I didn't hear you. |
| Officer Udero: | Okay, well. |
| Huizar: | I didn't— |
| Officer Udero: | It went down. |
| Huizar: | —I swear. |
| Officer Udero: | It went down the way it did. |
| Huizar: | She was attacking me. |
| Officer Udero: | It went down the way it did, so you're detained. Okay. You're detained. It's safer for us. We're able to conduct business without worrying about whether you're going to do something or not do something. I know you said you wouldn't. We don't know you— |
| Huizar: | Of course not. |
| Officer Udero: | Okay. Alright. Okay. H-U-R-Z-A-R? |
| Huizar: | H-U-I-Z-A-R. I didn't come out uncooperative. I came out— |
| Officer Udero: | Okay. Okay. We got it. Alright, so what's your, what's your first name? |

Officer Udero collected Huizar's identifying information and explained that, contrary to Huizar's characterization that he and Officer Lloyd were "f-cking freaking out" in response to seeing blood on Miranda, they were just trying to assess the situation because they had been told that Huizar "possibly had a gun." Huizar confirmed that he had a "f-cking Glock" upstairs and stated it was because he used to be in law enforcement.

5

After Officer Udero explained that they were "going to do what [they had to] do to stay safe," which included placing handcuffs on Huizar, Officer Udero asked Huizar to explain what happened. Huizar said that he and Miranda had been drinking outside, "mourning a friend" of Huizar's who had recently passed away, when Miranda became jealous. "[S]he just started, 'why [sic] you mourning her so much?' She just started getting very jealous. She broke my phone," said Huizar. After Miranda broke his phone, Huizar said she proceeded to "attack[] [him] with the phone," and "she went at [him]." Huizar said he "blocked her out of self-defense," and she was hit with his forearm. Huizar then "bolted" inside, tried to lock her out, ran upstairs, and called 9-1-1.

At approximately 9:51 p.m., Officer Lloyd returned to speak with Huizar, and Huizar reiterated what he told Officer Udero.[8] Huizar, however, added that Miranda "punched [him] a couple of times." Officer Lloyd thereafter documented Huizar's full name, date of birth, and injuries, noting that Huizar had some "red puffing" on the right side of his face.[9]

As the conversation progressed, it became more casual. Officer Lloyd offered to get water for Huizar's pets, and Huizar placed his pets outside before returning back to the living room at approximately 9:57 p.m. Huizar spoke unprompted during periods of silence. At 10:07 p.m., in response to Huizar's jokes about his excessive weight gain, Officer Lloyd adjusted Huizar's handcuffs and explained, "I'm giving you two sets [of hand cuffs] until I sort all this out, figure out what she's doing. I gotta [sic] talk to her again. . . . As soon as my partner comes back in here, I'll go back out and talk to her;

---

[8] At one point, Miranda re-entered the home, interrupting Huizar's statement to police. Officer Lloyd ordered Miranda to exit the home so that he could continue to speak to Huizar. Officer Udero escorted Miranda outside.

[9] The trial court suppressed statements made by Huizar after this point.

maybe she's calmed down a little bit more." At 10:16 p.m., Officer Lloyd asked another officer whether "EMS [was] done" with Miranda. Several minutes later, Officer Lloyd and Huizar discussed Huizar's DVD collection. Officer Lloyd left Huizar unattended for a few minutes, and when he returned at 10:23 p.m., Huizar asked Officer Lloyd if he could leave. In response, Officer Lloyd said:

> I gotta [sic] talk to her again. You know how it goes. . . . Family violence is like a big button in Texas, uh it's a hot button, so we're expected to do something so I gotta [sic] talk to her one more time to figure out where we're gonna [sic] go with this situation. But because we were called out for family violence and you've got injuries and she's got injuries, we gotta [sic] do something . . . . I gotta [sic] talk to her again and get her to clarify her story one more time and see if anything, if there's any inconsistencies in her story after I've been away from her for thirty minutes now.

Officer Udero entered the residence with Miranda at 10:25 p.m., and Officer Lloyd instructed Miranda to go upstairs. After she departed, while still in Huizar's presence, Officer Lloyd told another officer, "Let me go talk to her one more time to get clarification on her story. She was all over the place when I was talking to her earlier." Before walking upstairs, Officer Lloyd once more asked Huizar to describe where they were when the assault first started. One minute later at 10:26 p.m., Officer Lloyd joined Miranda upstairs, where she was being photographed to document her injuries. At 10:33 p.m., Officer Lloyd returned to the living room and placed Huizar under arrest. Huizar protested, re-asserting that Miranda had instigated the assault. Officer Lloyd explained that he was arresting Huizar based on the severity of Miranda's injuries.

On cross-examination, Officer Lloyd conceded tensions were high during the start of the encounter, but he denied ever threatening Huizar. Officer Lloyd confirmed that had Huizar tried to run away, Officer Lloyd "would have attempted to stop him."

Huizar also testified at the hearing. Huizar stated his initial comment to Officer Lloyd, asking that Officer Lloyd "just shoot [him]," had been uttered as a "nervous response" to the officer's presence. Huizar testified that he interpreted Officer Lloyd's question, "Where's [sic] your f-cking wounds, huh," as a "direct threat" and believed that when he was placed in handcuffs, he was already under arrest.

After viewing the recordings, the district court issued an order denying in part and granting in part Huizar's motion to suppress and issued the following findings of fact and conclusions of law relevant to the issue on appeal:

> The Court finds that when the defendant was handcuffed inside the residence, he was detained and not under arrest. An investigative detention occurs when an individual is temporarily detained by law enforcement for purposes of an investigation. *Castro v. State*, 373 S.W.3d 159, 164 (Tex. App.—San Antonio, 2012, no pet). This will be viewed from the perspective of a reasonable officer at the scene, rather than using hindsight. *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997). The reasonableness of this detention is going to turn on a review of the totality of the circumstances and using common sense. *Id*[.;] *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011). In reviewing the totality of the circumstances, the detention of the defendant was reasonable. The defendant was placed in handcuffs to maintain the status quo while the officers sought additional information regarding an assault claim. . . . The detention did not escalate to a full arrest based upon the use of handcuffs nor the defendant's dubious testimony that he felt intimidated while being detained. The tone of the conversations once the defendant was handcuffed do not show intimidation, and he was further told that he was only being detained. He was not transported away from the location while being detained. A reasonable person would not believe his freedom of movement was restrained to the degree associated with formal arrest. He was still in his own home.
>
> The Court finds that the statements made by the defendant to Officer[] Lloyd and Officer Udero upon initial questioning were voluntary. Viewing the totality of the circumstances, including the tone of the conversation and miscellaneous statements voluntarily made regarding the defendant's history as a jailor clearly indicate a lack of custodial interrogation. . . . The Court therefore DENIES the Motion to Suppress as to statements of the

defendant up to approximately the 17-minute mark. This is specifically pertaining to the first conversation with Officer Lloyd. However, in the Court's opinion, after this, it is clear that the officer has made the decision to arrest, based upon probable cause. Statements made subject to officer questioning following this decision to arrest from that point forward are to be suppressed.

The trial court also granted the motion to suppress as to the following specific statements on grounds not pertinent to this appeal: (1) "Officer Lloyd's unfairly prejudicial initial commentary in confrontation with the defendant, in which he states[,] 'Where's your f[-]cking wounds[?] [H]er face is bloody as f[-]ck'"; (2) Miranda's statements to EMS following their treatment of her injuries; and (3) "spontaneous statements of [Miranda] regarding any alleged prior incidents as referenced in [specific findings provided by the court]."

Huizar thereafter pleaded guilty to the offense as charged and retained his right to appeal. This appeal followed.

## II.    MOTION TO SUPPRESS

By his sole issue, Huizar asserts that as soon as he was handcuffed, he was being held as part of a custodial interrogation, and the officers' failure to administer *Miranda* warnings rendered Huizar's subsequent statements inadmissible. *See Miranda v. Arizona*, 384 U.S. 463, 444 (1966).

## A.    Standard of Review

"'We review a trial court's denial of a motion to suppress for an abuse of discretion and apply a bifurcated standard of review, affording almost complete deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of credibility and demeanor.'" *Wells v. State*, 611 S.W.3d 396,

405–06 (Tex. Crim. App. 2020) (quoting *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016)). We review de novo mixed questions of law and facts that do not hinge on assessments of credibility or demeanor. *Id.* We will sustain the trial court's ruling if the ruling is correct under any applicable theory of law. *Id.*

## B.     Applicable Law

A defendant seeking the suppression of a statement on *Miranda* grounds has the threshold burden of clearly establishing that his statements were given during custodial interrogation before the burden shifts to the State to show compliance with *Miranda*. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007); *see Miranda*, 384 U.S. at 444; *see also Martinez-Hernandez v. State*, 468 S.W.3d 748, 758 (Tex. App.—San Antonio 2015, no pet.) (providing that a suppressible statement may be "any inculpatory or exculpatory statements that the prosecution might wish to introduce" at trial).

A person is "in custody" for *Miranda* purposes when there is either (1) a formal arrest or (2) "a restraint on the person's freedom of movement to the degree an objectively reasonable person would otherwise associate with a formal arrest." *State v. Saenz*, 411 S.W.3d 488, 496 (Tex. Crim. App. 2013); *see J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011) ("Because [*Miranda* warnings] protect the individual against the coercive nature of custodial interrogation, they are required only where there has been such a restriction on a person's freedom as to render him in custody.") (internal quotations omitted). The Texas Court of Criminal Appeals has recognized at least four general situations that may constitute custody: (1) the suspect is physically deprived of his or her freedom of action in any significant way; (2) a law enforcement officer tells the suspect that he or she cannot

leave; (3) law enforcement officers create a situation that would lead a reasonable person to believe that his or her freedom of movement has been significantly restricted; or (4) there is probable cause to arrest, probable cause is manifested to the suspect, and law enforcement officers do not tell the suspect that he or she is free to leave. *Saenz*, 411 S.W.3d at 496 (citing *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996)); *see State v. Ortiz*, 382 S.W.3d 367, 376–77 (Tex. Crim. App. 2012) (indicating that the four categories were intended to be "merely descriptive, not exhaustive").

Notably, many of the aforementioned situations may also be present during an ongoing criminal investigation, and simply being the focus of a criminal investigation or being detained does not automatically equate to being in custodial detention for *Miranda* purposes. *See Meadoux v. State*, 307 S.W.3d 401, 409 (Tex. App.—San Antonio 2009), *aff'd*, 325 S.W.3d 189 (Tex. Crim. App. 2010); *see generally State v. Whittington*, 401 S.W.3d 263, 274 (Tex. App.—San Antonio 2013, no pet.) ("[N]ot being free to leave is an inherent feature of a temporary detention."). Further, in some situations, an officer may reasonably draw a weapon, handcuff a suspect, or place a suspect in a patrol car to conduct an investigative detention—and the use of such force does not necessarily transform the investigative detention into a custodial detention. *See, e.g.*, *State v. Sheppard*, 271 S.W.3d 281, 289–90 (Tex. Crim. App. 2008) (concluding that handcuffing appellant was reasonable during an investigative detention after appellant had just threatened another person with a large knife, and the officer testified he needed to check the residence for officer safety); *Mount v. State*, 217 S.W.3d 716, 275–730 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (concluding the same where officers drew weapons

11

on appellant, citing routine safety, during a felony stop of a suspected stolen vehicle). "[A]llowances must be made for the fact that officers must often make quick decisions under tense, uncertain[,] and rapidly changing circumstances." *Kuether v. State*, 523 S.W.3d 798, 808 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (citing *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997)). Thus, we evaluate "custody on an ad hoc basis, after considering all of the (objective) circumstances and apply[ing] the reasonable person standard." *Herrera*, 241 S.W.3d at 532 (quoting *Dowthitt*, 931 S.W.2d at 254–55) (cleaned up); *see J.D.B.*, 564 U.S. at 270. While the subjective views of the interrogating officer and the person being questioned are generally irrelevant, "if the officer manifests his belief to the detainee that he is a suspect, then that officer's subjective belief becomes relevant to the determination of whether a reasonable person in the detainee's position would believe he is in custody." *Ortiz*, 382 S.W.3d at 373.

## C.    Discussion

It is undisputed that Huizar was not given *Miranda* warnings prior to the time he made the challenged statements to police. *See Miranda*, 384 U.S. at 444. Therefore, our inquiry is whether Huizar was under custodial interrogation when he made those statements he now seeks to suppress.

On appeal, Huizar alleges that several factors indicate he had been put "in custody when he was placed on the couch" at approximately 9:45 p.m.: (1) Officer Lloyd had probable cause to arrest Huizar for assault as soon as he entered the home; (2) despite the officers' assurances that Huizar was simply being temporarily detained, Officer Lloyd's "actions tell otherwise" because Huizar was handcuffed at gunpoint while Officer Lloyd

12

yelled profanity-ridden accusations at him; and (3) "the focus of the investigation was clearly on [Huizar]" although Huizar contacted 9-1-1 and identified Miranda as the primary aggressor. *See Saenz*, 411 S.W.3d at 496; *Hawkins v. State*, 592 S.W.3d 602, 610 (Tex. App.—Corpus Christi–Edinburg 2020, pet. ref'd). For reasons explained below, a consideration of the entire circumstances surrounding Huizar's detention does not yield a finding of restraint to the degree associated with a formal arrest. *See Saenz*, 411 S.W.3d at 496.

When reviewing the amount of force utilized, we must consider the reasonableness of the officer's actions from the perspective of a reasonable officer present at the scene. *Rhodes*, 945 S.W.2d at 118; *Castro v. State*, 373 S.W.3d 159, 165 (Tex. App.—San Antonio 2012, no pet.) (rejecting "a bright-line test" in favor of allowing "ordinary human experience to govern" when reviewing the amount of force utilized to determine the type of detention). Prior to handcuffing Huizar, within a two-minute span, the following occurred: (1) Officer Lloyd was greeted by Miranda, who claimed that she had been assaulted by Huizar and that Huizar was upstairs with a gun in his possession; (2) Officer Lloyd observed Miranda's face, neck, and chest were covered in blood; and (3) Huizar was initially nonresponsive to Officer Lloyd's instructions and commented, "Shoot me. I don't give a f-ck, man," as he approached Officer Lloyd, additionally ignoring Officer Lloyd's commands to "stop right there." Under these circumstances, Officer Lloyd's decision to have his weapon drawn and handcuff Huizar was no more than reasonably necessary to investigate the situation, preserve a peaceable status quo, and ensure officer safety. *See Sheppard*, 271 S.W.3d at 289–90; *Whittington*, 401 S.W.3d at 273;

13

*see also Ramirez v. State*, No. 13-15-00102-CR, 2016 WL 3911223, at \*3 (Tex. App.—Corpus Christi–Edinburg July 14, 2016, pet. ref'd) (mem. op., not designated for publication) ("'[O]fficers may use such force as is reasonably necessary' to effect a valid goal of intervention: investigation, maintenance of the status quo, or officer safety." (quoting *Zayas v. State*, 972 S.W.2d 779, 789 (Tex. App.—Corpus Christi–Edinburg 1998, pet. ref'd))).

Moreover, that Huizar was the focus of the investigation or that Officer Lloyd may have had probable cause to arrest Huizar after speaking to Miranda and observing her injuries did not alone elevate the investigative detention to a custodial detention when the officers made it clear to Huizar that an investigative detention was underway. *See Saenz*, 411 S.W.3d at 496; *Koch v. State*, 484 S.W.3d 482, 489 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("'[A] temporary detention, in which the person is not free to leave, while the police officer investigates whether a crime has been committed' is constitutionally permissible." (quoting *Sheppard*, 271 S.W.3d at 289)); *see, e.g.*, *Castro*, 373 S.W.3d at 165–66 (concluding appellant was not in custody for purposes of *Miranda* where he had been identified as "a person reasonably suspected of criminal activity" and was detained for "twenty-five to forty-five minutes" while officers "engage[d] in an investigatory procedure"); *Bartlett v. State*, 249 S.W.3d 658, 668–69 (Tex. App.—Austin 2008, pet. ref'd) (concluding the same where appellant had been handcuffed, moved to a different location, and asked to "tell his side of the story" following eyewitnesses' complaints of a "pretty severe" assault that left the complainant hospitalized); *see also Collins v. State*, No. 01-17-00920-CR, 2018 WL 6421678, at \*19 (Tex. App.—Houston [1st Dist.] Dec. 6,

14

2018, pet. ref'd) (mem. op., not designated for publication) (concluding the same where appellant was interviewed for thirty-four minutes in a vehicle parked outside his residence while officers executed a search warrant for appellant's electronics, and after confessing to possessing child pornography, appellant was required to sit in "a common area" of his home with a uniformed officer while officers completed their search).

We further note that Officer Lloyd's allegedly accusatory comments, made while Huizar was being handcuffed, were in response to Huizar's statement that Officer Lloyd "calm the f-ck down" and Huizar's unprovoked claim that Miranda had "f-cking attacked." As Huizar acknowledges in his brief, once he was handcuffed, "everything ha[d] calmed down." Neither Officer Lloyd nor Officer Udero were accusatory or threatening in their brief initial questioning of Huizar, which spanned five minutes, respectively, and wherein both officers attempted to ascertain what had happened from Huizar's perspective.[10] *See Martinez-Hernandez*, 468 S.W.3d at 758 ("'[R]outine inquiries, questions incident to booking, broad general questions such as "what happened" on arrival at the scene of a crime, and questions mandated by public safety concerns are not interrogation.'" (quoting *State v. Ortiz*, 346 S.W.3d 127, 134–35 (Tex. App.—Amarillo 2011), *aff'd*, 382 S.W.3d at 367)); *cf. Carter v. State*, 309 S.W.3d 31, 40 (Tex. Crim. App. 2010) (indicating that an accusatory, hostile, and coercive interrogation supports a determination that a suspect is

---

[10] Because the trial court suppressed evidence of Huizar's statements made after Officer Udero and Officer Lloyd's initial questioning—all statements made by Huizar after 9:55 p.m.—we need not analyze the circumstances present following these statements. Additionally, although the trial court addressed the issue of voluntariness in its findings of fact and conclusions of law, having already concluded that Huizar was not in custody at the time of his statements, the voluntariness of Huizar's statements is no longer at issue. *See Wolfe v. State*, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996) ("If an accused is not in custody when he makes a statement, then the question of voluntariness does not arise."); *see also Robbins v. State*, No. 13-19-00349-CR, 2020 WL 4812630, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 13, 2020, pet. ref'd) (mem. op., not designated for publication).

15

in custody); *Garza v. State*, 34 S.W.3d 591, 596 (Tex. App.—San Antonio 2000, pet. ref'd) (concluding the same). Huizar also spoke often and uninhibited, and though handcuffed, he was permitted to move around the general area. *See Herrera*, 241 S.W.3d at 532; *see, e.g.*, *Dorch v. State*, 596 S.W.3d 871, 890–91 (Tex. App.—San Antonio 2019, pet. ref'd) (listing objective factors, such as that the appellant was given breaks during questioning, "provided with coffee[,] and permitted to use the restroom" during a three and one-half hour interview, to support its determination that appellant was not in custody).

In light of the foregoing facts, we cannot conclude that Huizar was under custodial detention as soon as he was "placed on the couch." The record reflects that Huizar, within the seventeen minutes wherein he made the statements he now seeks to suppress, was restrained to the degree reasonably associated with an investigative detention and not with a formal arrest. *See Ortiz*, 382 S.W.3d at 372–73; *Saenz*, 411 S.W.3d at 496. Huizar's sole issue is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
15th day of July, 2021.

16