

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-13-00048-CR

The **STATE** of Texas,
Appellant

v.

Christopher Glen **ADAMS**,
Appellee

From the County Court at Law, Kerr County, Texas
Trial Court No. CR120324
Honorable Spencer W. Brown, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Catherine Stone, Chief Justice
                Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  June 25, 2014

ABATED AND REMANDED

        This case stems from a trial court's grant of a motion to suppress following the arrest of

Appellee Christopher Glen Adams for driving while intoxicated.  On appeal, the State argues the

trial court erred in refusing to file more specific findings of fact requested by the State.  We agree

and remand this cause to the trial court for further proceedings consistent with this opinion.  *See*

TEX. R. APP. P. 44.4 ("[T]he trial court's erroneous action or failure or refusal to act prevents the

proper presentation of a case to the court of appeals.").

**FACTUAL BACKGROUND**

Following a single car accident, Adams was arrested on January 22, 2012, for driving while intoxicated. Adams's motion to suppress was heard on January 9, 2013. The State called two witnesses—an eyewitness, Brandie Nicole Masters, and the investigating officer at the scene, Department of Public Safety Trooper James Salaz. No other witnesses testified at the hearing.

**A.      Brandie Nicole Masters**

Masters testified that on January 22, 2012, at approximately 2:00 a.m., she was sitting outside with her mother when they heard a crash. Both women drove together to investigate and to ensure that no one was injured. Within minutes, Masters and her mother located an Isuzu pick-up truck approximately ten feet off the road, in the cedar trees, and against a fence. They also saw two men exiting the truck, one of which appeared to be injured with blood on his face. Masters's mother rolled down her window to check on the passenger and to inform the men that they had reported the accident to 911 and that there was "an officer on the way." When asked if the men wanted them to call anyone, they told Masters and her mother that someone was coming. Out of caution due to the late hour and an empty roadway, Masters and her mother drove to the nearby fire station and awaited the officer's arrival.

On cross-examination, Masters confirmed that she could not identify Adams as the man from the accident scene that night or state whether he had been intoxicated. She explained it was very dark on the side of the road and she never exited her vehicle.

**B.      Trooper James Salaz**

Trooper Salaz testified that he was dispatched by the Kerr County Sheriff's Office at 1:20 a.m. for an accident. When he arrived, he observed an Isuzu pick-up truck, off into the brush, on the right side of the road, and it was into the trees. He did not see anyone in or around the vehicle.

Trooper Salaz met with Masters who informed him that she believed a gentleman identified as Aaron Steinle had picked up the two men. Trooper Salaz sent two deputies to the Steinle residence "just around a curve from where the crash occurred." The deputies were still waiting for someone to come out of the residence when Trooper Salaz arrived at the Steinle gate. As Trooper Salaz arrived, a truck pulled up and Adams exited out of the passenger door. Trooper Salaz testified that he and Adams "started conversing in regards to this crash." Adams told Trooper Salaz, "I'm the driver. I just was going home. I felt I needed to come back." About the same time as Adams arrived, Charles Rice came out of the residence. Trooper Salaz learned that Rice, who was clearly injured with blood on his face, was the passenger in Adams's vehicle.

Trooper Salaz explained he was "suspicious" of the accident and the events because, in his experience, most people wait for officers to arrive to make a report. "It's just not normal for them to wander off and leave [the vehicle]." Trooper Salaz testified that, by this point, he could smell alcohol "coming from [Adams] as we were talking at Aaron's gate," and Adams acknowledged consuming a few beers.

During his testimony, Trooper Salaz further explained he told Adams that "[s]ince this involved an injury, especially an injury, and damage in excess of a thousand dollars," he needed to complete a "crash report." According to Trooper Salaz's testimony, "I asked [Adams] if we could go back to the scene, and so I [could] complete my crash report." Trooper Salaz continued that Adams readily agreed, and that an "unhandcuffed" Adams "jumped in my patrol car" and they drove to the scene of the accident. When asked, Trooper Salaz testified that Adams was not under arrest, and the only reason Adams was in his patrol car was so they could return to the truck to generate the crash report.

On the drive back to the accident, however, Trooper Salaz testified "the air within the car filled up with that odor of someone who has been drinking" and Adams again admitted to

consuming alcohol.  As part of his investigation, Trooper Salaz "wanted to make sure [Adams] should have been driving in the first place" and requested Adams complete some field sobriety tests.  Adams agreed.  However, because Trooper Salaz did not feel the accident scene—an undulated, dirt roadway—was a safe place to conduct the tests, he drove Adams to the volunteer fire department which had a large parking lot, "a safer environment."

There, based on Adams's performance of the horizontal gaze nystagmus, walk and turn, and one-leg stand tests, combined with the smell of alcohol, and Adams's admissions to consuming alcohol, Trooper Salaz placed Adams under arrest for driving while intoxicated.

On cross-examination, Trooper Salaz conceded that he did not see Adams driving the Isuzu or wreck the vehicle.  He also acknowledged that although he told Adams that he was legally obligated to stay at the scene of the accident because someone was injured and there was over $1,000.00 in damage, he was actually only required to report the accident, not necessarily stay at the scene.

### C.    Trial Court Action

The trial court took the matter under advisement.  On April 11, 2013, the trial court granted Adams's motion to suppress concluding, inter alia, (1) Adams was arrested without probable cause, (2) Trooper Salaz's actions amounted to a custodial arrest, and (3) the Texas Transportation Code did not require Adams to remain at the scene of the accident.[1]

---

[1] More specifically, the trial court's conclusions of law provided as follows:

- "Trooper Salaz lacked probable cause to arrest [Adams] for [driving while intoxicated] on January 22, 2012;"
- Adams "yielded to the authority of Trooper Salaz when he was ordered to get into the Trooper's Patrol car and moved 2 separate times to two separate locations.  This yield to the authority of the Trooper was a detention. . . . Because there was no reasonable suspicion to justify the Defendant's original detention, any evidence gathered after the improper detention should have been suppressed."
- Trooper Salaz did not see Adams operating his vehicle.  "However, a warrantless arrest for DWI may be made if probable cause exists to arrest the Defendant for public intoxication committed in

On April 26, 2014, the State filed a motion requesting the trial court file more specific findings. No further findings were filed by the trial court. The State claims the trial court erred in refusing to make the requested specific findings on the essential facts and, therefore, requests this court remand the matter to the trial court for further findings of fact.

## MOTION TO SUPPRESS

### A.    Standard of Review

An appellate court reviews a trial court's ruling on a motion to suppress under an abuse of discretion and disturbs such ruling only if it falls "outside the zone of reasonable disagreement." *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011); *accord State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *Castro v. State*, 373 S.W.3d 159, 163 (Tex. App.—San Antonio 2012, no pet.). "We further apply a bifurcated standard of review, according almost total deference to the trial court to determine historical facts and those facts which depend upon witness credibility." *Castro*, 373 S.W.3d at 163–64 (citing *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007)).

When the trial court enters findings of fact, the appellate court considers all of the evidence in the record and "must determine whether the evidence supports those facts by viewing the evidence in favor of the trial court's ruling." *Id*. at 164 (citing *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009)); *accord Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). Additionally, an appellate court must "uphold the trial court's ruling if it is supported by the record and is correct under any theory of law applicable to the case." *State v. Iduarte*, 268

---

the Trooper's presence. See Warrick v. State, 634 SW2d [sic] 707, 709 (Tex. Crim. App. 1982). In this case when the Defendant was detained, his liberty deprived and ordered into the Trooper's patrol car, there was no probable cause to arrest the Defendant for public intoxication."

- Neither section 550.023 nor section 550.026 of the Texas Transportation Code requires the operator to remain at the scene of the accident.

S.W.3d 544, 548 (Tex. Crim. App. 2008); *accord Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

**B.      The State's Argument**

The State argues the trial court's failure to provide more specific findings of fact and conclusions of law "covering every potentially dispositive issue that might reasonably be said to have arisen in the course of the suppression proceedings" violates the Court of Criminal Appeals mandate in *State v. Elias*, 339 S.W.3d 667, 676 (Tex. Crim. App. 2011).   Although only two witnesses testified, the State argues the trial court failed to make specific findings of fact that allow this court to conduct its review.   Our analysis focuses specifically on the State's request for more specific findings as to the following:

(1)    Whether Rice was injured and had blood on his face;

(2)    Before Trooper Salaz requested Adams accompany him back to the crash scene, whether Adams (a) admitted he was the driver of the truck, (b) smelled of alcohol, and (c) admitted drinking a few beers; and

(3)    Whether the events that transpired at the fire station and its relevance to Trooper Salaz's determination to place Adams under arrest.[2]

---

[2] The relevant portion of the State's motion for specific findings of fact requested the trial court make more specific findings on the following:

    a.      On page 26, line 25 of the Reporter's Record, Trooper Salaz describes his observation that Defendant's passenger was injured and had blood on his face.  The trial court's findings are silent on Trooper Salaz's observation that the passenger Mr. Rice was injured and had blood on his face.

    b.      In the trial court's Finding of Fact #11 ["After initial questioning, the Defendant admitted he was the driver of the truck up the road in the trees."], the trial court finds that "after initial questioning, the Defendant admitted he was the driver of the truck up the road in the trees."  This was before the Defendant was transported back to the crash scene.  In the same initial conversation the Trooper has with the Defendant where the Defendant admitted to being the driver, the Trooper testified he smelled alcohol coming from the Defendant and the Defendant admitted [ ] he had a few beers.  The trial court's findings are silent on Trooper Salaz's testimony that during the initial conversation with Defendant before Defendant was transported back to the crash scene, Trooper Salaz smelled alcohol coming from the Defendant and the Defendant admitted that he had a few beers.  See Reporter's Record, p. 27.

    c.      The trial court's findings of fact stop at the point where Trooper Salaz relocates Defendant to the upper Turtle Creek Volunteer Fire Station.  Pages 30–32 of the Reporter's Record in addition to the Trooper's patrol car video document the performance of [Standard Field Sobriety Tests] and further investigation conducted by Trooper Salaz at the Fire Station.

Because the State's request for the trial court to provide more specific findings of fact was not honored, we must first determine what essential findings the trial court was required to make.

## C.     The *Elias* Standard

In *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006), the Court of Criminal Appeals explained that a trial court is required to make "[essential] findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts." Five years later, the court in *State v. Elias*, 339 S.W.3d 667, 676 (Tex. Crim. App. 2011), extended the trial court's requirement to a more complete determination "covering every potentially dispositive issue that might reasonably be said to have arisen in the course of the suppression proceedings."

In our examination of whether the trial court met the *Elias* standard, we must resolve what essential facts the trial court was required to establish. *Id.* Here, the court's conclusions of law necessitated a determination of (1) whether Adams was arrested or detained and (2) whether Trooper Salaz possessed the necessary probable cause to arrest Adams for driving while intoxicated.[3]

---

The trial court's findings are silent on what happened at the Fire Station leading up to Defendant's arrest for DWI in the parking lot of the Fire Station.

[3] In its findings of fact, the trial court made the following factual determinations regarding Trooper Salaz and his actions leading up to the arrest of Adams:

9)   Trooper Salaz when he arrived on the scene observed an unoccupied vehicle in some trees off the public roadway.

10)  Trooper Salaz left the scene of the vehicle in search of the occupants and went to a house up the road where he met the Defendant riding up to the house as a passenger in another vehicle. A. Mr. Aaron [Steinle] was the driver of the truck and the Defendant was a passenger.

11)  After initial questioning, the Defendant admitted he was the driver of the truck up the road in the trees.

12)  The Defendant was not the registered owner of the truck in the trees.

13)  Trooper Salaz made the Defendant get in his patrol car and escorted him back to the scene where the truck was in the trees.

14)  While in the patrol car, the Trooper noticed the smell of alcohol, so he "jumped right into" a DWI investigation.

We first turn to whether Adams's warrantless detention amounted to a custodial arrest.

*1.      Custodial Arrest versus Investigative Detention*

The amount of information required for law enforcement to stop and detain an individual for investigative purposes is less than what is constitutionally required for probable cause to arrest an individual. *See Amores v. State*, 816 S.W.2d 407, 411 (Tex. Crim. App. 1991). "An investigative detention occurs when an individual is temporarily detained by law enforcement officials for purposes of an investigation." *Castro*, 373 S.W.3d at 164; *accord State v. Garcia*, 25 S.W.3d 908, 911 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995)). A detention for investigatory purposes requires an officer possess "a reasonable, articulable suspicion that the individual has been, or soon will be engaged in criminal activity." *Castro*, 373 S.W.3d at 164 (citing *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)). Without regard to the officer's subjective intent and based on the totality of the circumstances, an appellate court "looks solely to whether an objective basis for the stop exists." *Ford*, 158 S.W.3d at 492–93; *see Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007); *Castro*, 373 S.W.3d at 164.

In assessing whether a seizure is an investigative detention or an arrest, we take an objective view of the officer's actions—"judged from the perspective of a reasonable officer at the scene,

---

15) The Trooper took the Defendant back to the original scene and requested he perform field sobriety test[s]. The Trooper then ordered the Defendant back into his patrol car a 2nd time to relocate to a more suitable area to perform the field sobriety tests.

16) The Trooper had no idea what time the alleged wreck happened.

17) The Trooper did not witness the Defendant operating a motor vehicle in a public place while intoxicated. The Trooper did not witness any wreck.

18) The Defendant had no way to leave the investigation scene.

19) Trooper testified [the] law does not require a person to remain at scene of accident only they have to report it. However, the Trooper ordered the Defendant into his vehicle and required him to return to the scene. At this point in time, no evidence was introduced that alleged the Defendant was intoxicated, showed any signs of intoxication or was a danger to himself or anyone else in a public place.

rather than with the advantage of hindsight." *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997); *accord Akins v. State*, 202 S.W.3d 879, 893 (Tex. App.—Fort Worth 2006, pet. ref'd). Whether a detention is an investigative detention or an arrest depends upon the facts and circumstances surrounding the detention. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010); *Amores*, 816 S.W.2d at 412. We begin our determination of whether Adams's detention escalated to an arrest by considering (1) the amount of force demonstrated by the officer, (2) the duration of the detention and efficiency of the investigative process, (3) the location and relocation of the investigation, and (4) any statements made by Trooper Salaz to Adams. *See State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008).

      a.     <u>Amount of Force</u>

When reviewing the amount of force utilized, we look to the reasonableness of the officer's actions from the perspective of a reasonable officer present at the scene. *Rhodes*, 945 S.W.2d at 118. An officer may use necessary and reasonable force to accomplish the purpose of the stop. *Castro*, 373 S.W.3d at 165.

Here, the trial court concluded that Trooper Salaz "made" Adams get into his patrol car and drove him back to the crash scene. But Trooper Salaz's testimony provided that he *asked* Adams to ride back to the accident scene, that Adams was "unhandcuffed," and that Adams "jumped in my patrol car," was uncontroverted. Without further factual findings, we are unable to determine whether Trooper Salaz's use of force was unreasonable or if such action rose to the level of custodial arrest.

      b.     <u>Duration of the Detention</u>

"A detention's duration must demonstrate the officers efficiently pursued an investigation to confirm or dispel their suspicions." *Id*. In *Balentine v. State*, 71 S.W.3d 763, 770 n.7 (Tex. Crim. App. 2002), the court concluded that less than one hour is a reasonable detention. Here,

Trooper Salaz was dispatched at 1:20 a.m. and Adams was arrested at 2:11 a.m. In less than one hour, Trooper Salaz inspected the scene of the accident, interviewed both Masters and her mother, determined the extent of Rice's injuries, traveled to three different locations, and performed three field sobriety tests. Additionally, the trial court's findings are as to arresting Adams based on public intoxication, not driving while intoxicated. Without further findings of fact, we are unable to determine whether Trooper Salaz detained Adams for an unreasonable amount of time before making a decision to arrest Adams for driving while intoxicated.

c.     Original Location and Relocation of the Investigation

This court has previously held that "[m]oving a suspect a short distance to further an investigation is consistent with an investigatory detention's purpose." *Castro*, 373 S.W.3d at 166. Although the trial court concluded moving Adams to two different locations was evidence that Adams was under custodial arrest, there are no findings of fact as to why Adams was moved from the Steinle residence to the crash scene and then to the fire station.

Trooper Salaz testified that Adams agreed to accompany him to the scene of the accident. However, while traveling with Adams in his patrol car, Trooper Salaz confirmed Adams smelled of alcohol and that Adams admitted he had consumed alcohol. Trooper Salaz determined he should investigate further. Once again, according to Trooper Salaz's testimony, Adams agreed to perform field sobriety tests. However, because Trooper Salaz determined the accident scene was not a safe location to conduct field sobriety tests, he transported Adams to the fire station. We note that all three locations were in close proximity and conducting field sobriety tests is not overly intrusive. *See Castro*, 373 S.W.3d at 166 (citing *Francis v. State*, 922 S.W.2d 176, 180 (Tex. Crim. App. 1996) (Baird, J., concurring and dissenting); *Rodriguez v. State*, 191 S.W.3d 428, 444 (Tex. App.—Corpus Christi 2006, pet. ref'd) (concluding "[t]he 'least intrusive means' available to

determine if appellant was intoxicated was to conduct a field sobriety test at the scene of the accident").

Based on the record before us, Trooper Salaz's transporting Adams for such short distances conflicts with the trial court's conclusion that these movements escalated any detention to an arrest. Without further factual findings, we are unable to determine whether Adams was being detained for any reason other than to allow Trooper Salaz to further investigate whether Adams had committed the offense of driving while intoxicated while still providing for the officer's and Adams's safety. *See Castro*, 373 S.W.3d at 166.

### d. Trooper Salaz's Statements and Intent

There is no indication in the record that Trooper Salaz ever told Adams or suggested that Adams was under arrest. *See Burkhalter v. State*, 642 S.W.2d 231, 232 (Tex. App.—Houston [14th Dist.] 1982, no pet.). To the contrary, Trooper Salaz testified he took Adams back to the crash scene "to get my crash report generated. Get the wrecker coming, because it is off the roadway." Additionally, Trooper Salaz explained the only reason he took Adams to the fire station was because it was a safer environment to perform field sobriety tests. *See Castro*, 373 S.W.3d at 166 (concluding evidence supported "that detention was an effort to further investigate the situation"). There is no evidence to the contrary.

We are also directed to look at the officer's intent. *Sheppard*, 271 S.W.3d at 291; *Burkes v. State*, 830 S.W.2d 922, 925 (Tex. Crim. App. 1991). Trooper Salaz testified that when he transported Adams back to the crash scene, he knew that Adams was involved in a single car accident, the damage to the vehicle exceeded $1,000.00, Adams left the accident scene and was at the Steinle residence, Adams smelled of alcohol and admitted consuming alcohol, and Rice's injuries were consistent with being the passenger in the vehicle. However, it was not until after

Adams failed to properly perform the field sobriety tests that he made the determination to arrest Adams for driving while intoxicated.

Without further factual findings, we are unable to determine whether the evidence supports that prior to conducting the field sobriety tests, Trooper Salaz's statements or actions manifested an intent to escalate the detention to a custodial arrest.

e.      Analysis

Here, the trial court concluded that Adams was "detained without probable cause," his liberty deprived, he was ordered into the Trooper's vehicle, and "there was no probable cause to arrest the Defendant for public intoxication."  The State contends the evidence prior to the completion of the sobriety tests shows Adams was being detained for investigation purposes to confirm Trooper Salaz's suspicions that Adams was driving while intoxicated.  *See Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997) ("'The propriety of the stop's duration is judged by assessing whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly.'") (quoting *Perez v. State*, 818 S.W.2d 512, 517 (Tex. App.—Houston [1st Dist.] 1991, no pet.)).  Without further factual findings, we are unable to determine whether Adams's custodial arrest began before or after Trooper Salaz completed the field sobriety tests at the fire station.

Having determined the trial court's factual findings do not contain the essential findings necessary to make a determination on whether Adams was under custodial arrest or investigative detention, we turn to whether Adams's warrantless arrest was without probable cause.

2.      *Warrantless Arrest Without Probable Cause*

The trial court also concluded that because Trooper Salaz did not see Adams driving the vehicle in question, "there was no probable cause to arrest the Defendant for public intoxication."

Adams points to what Trooper Salaz knew at the time Adams left the Steinle residence as the basis for probable cause. Specifically, Adams argues Trooper Salaz only knew that an accident had occurred, but not when it had occurred. Trooper Salaz did not see Adams drive the vehicle, and, neither Masters nor Trooper Salaz observed any signs of intoxication.

The State counters that Adams was not arrested at the time he was transported from the Steinle residence to the crash scene.

The trial court's findings of fact do not find any facts as to what transpired at the fire station. Absent such findings, this court is without a "basis upon which to review the trial court's application of the law to the facts." *Cullen*, 195 S.W.3d at 699.

Without a better understanding for the basis of the trial court's consideration of the events at the fire station, we cannot determine whether the trial court properly determined Adams was arrested without probable cause.

## CONCLUSION

As our analysis reveals, the trial court's findings of fact and conclusions of law fall short of "covering every potentially dispositive issue that might reasonably be said to have arisen in the course of the suppression proceedings." *Elias*, 339 S.W.3d at 676. Without further findings of fact, this court cannot determine whether the trial court's conclusions of law were in error. *Cullen*, 195 S.W.3d 696. We conclude the State's requested specific findings of fact are pertinent and required to assure the "proper presentation of" this case on appeal. *See* TEX. R. APP. P. 44.4; *Elias*, 339 S.W.3d at 675–76. Accordingly, the requested specific findings constitute essential findings and are necessary for our review of the trial court's application of the law to the facts, on the issues of (1) whether Adams was under arrest when he accompanied Trooper Salaz in his patrol car and (2) whether Adams was arrested without probable cause.

Consistent with the issues raised by the State, a dispute exists as to what transpired on the night in question. We conclude the trial court's findings do not include essential facts necessary to resolve the legal issues raised on appeal. *See Elias*, 339 S.W.3d at 676; *accord State v. Mendoza*, 365 S.W.3d 666, 670 (Tex. Crim. App. 2012). Specifically, the trial court must make "findings of fact with greater specificity" as to the following:

(1)     the impact of the injuries sustained by Mr. Rice and the blood on his face and whether any such injuries supported Trooper Salaz's probable cause to arrest Adams for driving while intoxicated;

(2)     the extent of Trooper Salaz's conversation with Adams, prior to Adams being transported back to the scene of the accident, wherein Adams admitted he was the driver of the vehicle and that he had been drinking, and whether such conversation supported a custodial arrest or an investigatory detention; and

(3)     whether Trooper Salaz transported Adams from the accident scene to the fire station was part of an investigatory detention, what transpired at the fire station, what factors were utilized in Trooper Salaz's decision to arrest Adams for driving while intoxicated, and whether such information amounted to probable cause to arrest Adams for driving while intoxicated.

Because these issues are necessary to the proper disposition of this case, we abate this appeal and remand this cause to the trial court. TEX. R. APP. P. 44.4; *Elias*, 339 S.W.3d at 676. We further direct the Honorable Spencer W. Brown, judge of the County Court at Law, Kerr County, Texas, to execute more specific findings of fact and conclusions of law, consistent with this opinion, as required by *Cullen* and *Elias*. We also direct the trial court to file its findings and conclusions with the clerk of this court, via a supplemental clerk's record, on or before July 25, 2014.

Upon filing of the supplemental clerk's record containing the findings and conclusions, the appeal will be reinstated.

Patricia O. Alvarez, Justice

PUBLISH