

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00048-CR

The **STATE** of Texas,
Appellant

v.

Christopher Glen **ADAMS**,
Appellee

From the County Court at Law, Kerr County, Texas
Trial Court No. CR120324
Honorable Spencer W. Brown, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:     Catherine Stone, Chief Justice
             Marialyn Barnard, Justice
             Patricia O. Alvarez, Justice

Delivered and Filed:  December 10, 2014

REVERSED AND REMANDED

This case stems from a trial court's grant of a motion to suppress following the arrest of

Appellee Christopher Glen Adams for driving while intoxicated.  Because we conclude the trial

court erred in determining that Adams was under arrest when the officer requested Adams

accompany him back to the accident scene, we reverse the trial court's order granting Adams's

motion to suppress and remand this matter to the trial court for further proceedings consistent with

this opinion.

PROCEDURAL BACKGROUND

This court previously issued an opinion in this DWI motion to suppress. *See State v. Adams*, No. 04-13-00048-CR, 2014 WL 2874270 (Tex. App.—San Antonio June 24, 2014, no pet.). Because the trial court erred in refusing to file the more specific findings of fact requested by the State, we remanded the cause to the trial court to make additional findings of fact and conclusions of law. *Id*. at *8. We instructed the trial court to "make 'findings of fact with greater specificity'" as to the following:

(1) the impact of the injuries sustained by Mr. Rice and the blood on his face and whether any such injuries supported [Department of Public Safety Trooper James Salaz's] probable cause to arrest Adams for driving while intoxicated;

(2) the extent of Trooper Salaz's conversation with Adams, prior to Adams being transported back to the scene of the accident, wherein Adams admitted he was the driver of the vehicle and that he had been drinking, and whether such conversation supported a custodial arrest or an investigatory detention; and

(3) whether [the period when] Trooper Salaz transported Adams from the accident scene to the fire station was part of an investigatory detention, what transpired at the fire station, what factors were utilized in Trooper Salaz's decision to arrest Adams for driving while intoxicated, and whether such information amounted to probable cause to arrest Adams for driving while intoxicated.

*Id.* at *7–8. On July 21, 2014, the trial court's additional findings of fact and conclusions of law were filed with this court and the matter was reinstated on this court's docket.

FACTUAL BACKGROUND

Having provided a rather detailed rendition of the facts in our previous opinion, we need not do so here. *See id*. at *1–2. The parties agree that an accident occurred in the early morning hours of January 22, 2012. A nearby resident called police and advised the officers that the two men in the vehicle were down the road at the Steinle residence. Upon Trooper Salaz's arrival at the residence, Adams immediately acknowledged he was the driver of the vehicle and ultimately entered Trooper Salaz's vehicle to accompany him to the accident scene. The parties disagree,

however, whether Adams's actions were voluntary and part of the investigative detention or they were the result of his arrest.

We, therefore, begin our analysis with whether Trooper Salaz's request for Adams to return with him to the accident scene amounted to an arrest.

## INVESTIGATIVE DETENTION OR ARREST

### A.      Standard of Review

An appellate court reviews a trial court's ruling on a motion to suppress under an abuse of discretion standard and disturbs such ruling only if it falls "outside the zone of reasonable disagreement." *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *Castro v. State*, 373 S.W.3d 159, 163 (Tex. App.—San Antonio 2012, no pet.).  "We further apply a bifurcated standard of review, according almost total deference to the trial court to determine historical facts and those facts which depend upon witness credibility." *Castro*, 373 S.W.3d at 163–64 (citing *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007)).  When the trial court enters findings of fact, the appellate court considers all of the evidence in the record and "must determine whether the evidence supports those facts by viewing the evidence in favor of the trial court's ruling."  *Id.* at 164 (citing *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009)); *accord Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012).

### B.      Degree of Restraint

"There are three distinct categories of interactions between police officers and citizens: (1) encounters, (2) investigative detentions, and (3) arrests." *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010) (citing *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002)).  Although both detention and arrest involve some form of restraint on one's freedom of movement; the difference is in degree.  *State v. Sheppard*, 271 S.W.3d 281, 290–91 (Tex. Crim. App. 2008);

*Castro*, 373 S.W.3d at 164.  The test for whether a person has been arrested is whether the facts demonstrate the individual's liberty of movement was actually restricted or restrained.  *See* TEX. CODE CRIM. PROC. ANN. art. 15.22 (West 2005); *Amores v. State*, 816 S.W.2d 407, 411–12 (Tex. Crim. App. 1991) ("An arrest occurs when a person's liberty of movement is restricted or restrained.").  Simply put, an arrest involves a greater degree of restraint on an individual's freedom of movement than that in an investigative detention.  *Sheppard*, 271 S.W.3d at 290 (identifying relevant factors including "the amount of force displayed, the duration of a detention, the efficiency of the investigative process and whether . . . the person is transported to another location, . . . [and] whether [the officer] told the detained person that he was under arrest).  When determining whether the officer's actions amounted to an arrest, we consider the totality of the circumstances.  *Crain*, 315 S.W.3d at 49; *Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005); *accord State v. Whittington*, 401 S.W.3d 263, 272 (Tex. App.—San Antonio 2013, no pet.).

## C.    Facts Before the Trial Court

During his testimony, Trooper Salaz further explained he told Adams that "[s]ince this involved an injury, especially an injury, and damage in excess of a thousand dollars," he needed to complete a "crash report."  According to Trooper Salaz's testimony, "I asked [Adams] if we could go back to the scene, and so I [could] complete my crash report."  Trooper Salaz continued that Adams readily agreed, and that an "unhandcuffed" Adams "jumped in my patrol car" and they drove to the scene of the accident.  When asked, Trooper Salaz testified that Adams was not under arrest, and the only reason Adams was in his patrol car was so they could return to the truck to generate the crash report.

Trooper Salaz testified that on the drive back to the accident "the air within the car filled up with that odor of somebody who has been drinking" and Adams again admitted to consuming alcohol.  As part of his investigation, Trooper Salaz "wanted to make sure [Adams] should have

been driving in the first place" and requested Adams complete some field sobriety tests. Adams agreed. However, because Trooper Salaz did not feel the accident scene—an undulated, dirt roadway—was a safe place to conduct the tests, he drove Adams to the volunteer fire department which had a large parking lot, "a safer environment."

Based on a strong smell of alcohol coming from Adams, Adams's admitting to consuming alcohol, and Adams's performance on the field sobriety tests (the horizontal gaze nystagmus, walk and turn, and one-leg stand tests), Trooper Salaz concluded that Adams "was not safe to drive" and placed Adams under arrest for driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.01(2) (West 2011) (defining intoxicated as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, . . . or any other substance into the body.").

On cross-examination, Trooper Salaz conceded that he did not see Adams either driving or wreck the vehicle. He also acknowledged that although he told Adams he was legally obligated to stay at the scene of the accident because someone was injured and there was over $1,000.00 in damage, Adams was actually only required to report the accident, not necessarily stay at the scene.

## D.     Analysis

In its second issue, the State contends the trial court erred in concluding that Adams was arrested at the Steinle residence. The evidence and the trial court's findings of fact show that Adams's liberty of movement was not restricted. *See* TEX. CODE CRIM. PROC. ANN. art. 15.22; *Amores*, 816 S.W.2d at 411–12. Specifically, Trooper Salaz testified that he asked Adams if he would mind accompanying him back to the scene. Adams was not handcuffed and there were no weapons drawn. Adams was not blocked in by police cars or ordered to accompany Trooper Salaz. To the contrary, Trooper Salaz stated he "asked" Adams to accompany him back to the scene of the accident and an "unhandcuffed" Adams "jumped in my patrol car" and the trial court found Trooper Salaz "requested" Adams to accompany him.

The circumstances in this case simply do not meet the level of *Amores* and its progeny. 816 S.W.2d at 411–12; *see also Medford v. State*, 13 S.W.3d 769, 773 (Tex. Crim. App. 2000) (concluding "arrest" occurs "when a person's liberty of movement is successfully restricted or restrained, whether this is achieved by an officer's physical force or the suspect's submission to the officer's authority"). *Compare Burkes v. State*, 830 S.W.2d 922, 925 (Tex. Crim. App. 1991) (concluding an arrest occurred when, without any prior questioning, officer shined a flashlight in the appellant's eyes, ordered him to lie on the ground, and handcuffed him); and *Hoag v. State*, 728 S.W.2d 375, 379 (Tex. Crim. App. 1987) (concluding an arrest occurred when suspect removed from the car at gunpoint, taken to the rear of the car, and given *Miranda* warnings); *Carter v. State*, 150 S.W.3d 230, 237–38 (Tex. App.—Texarkana 2004, no pet.) (holding investigatory detention when officer testified that he "asked" unhandcuffed, un-*Mirandized* defendant to get into the car and denied that he "told" him to get into the car); *with Lamb v. State*, No. 14-01-01034-CR, 2003 WL 21782346, at *5 (Tex. App.—Houston [14th Dist.] July 31, 2003, pet. ref'd) (mem. op., not designated for publication) (concluding an arrest had not occurred when the appellant walked away from the approaching officers; officer's partner told appellant to "come here;" the appellant continued to walk away; after officer's partner made contact with appellant's arm, appellant stopped and turned toward the officers); and *Garcia v. State*, 967 S.W.2d 902, 905 (Tex. App.—Austin 1998, no pet.) (concluding investigative detention and comparing to case when four police vehicles were on the scene and ten to fifteen officers, with weapons drawn, were present). Here, the facts only support that the interactions between Trooper Salaz and Adams, resulting in Adams accompanying Trooper Salaz in his patrol car back to the accident scene, amounted to an investigative detention and not an arrest. *See Crain*, 315 S.W.3d at 49. Because Adams was not arrested prior to leaving the Steinle residence, we sustain the State's second appellate issue.

## CONCLUSION

We conclude that Adams's presence in Trooper Salaz's vehicle was not an arrest. Because Adams does not raise an issue with the officer's probable cause to arrest for DWI based on the smell of alcohol emanating from Adams, Adams's admission of consuming alcohol, and his failed field sobriety tests, our analysis ends here. Accordingly, we reverse the trial court's grant of Appellee Adams's motion to suppress and remand this matter to the trial court for further proceedings consistent with this opinion.

Patricia O. Alvarez, Justice

PUBLISH