**Affirmed and Opinion Filed September 16, 2020**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01386-CR

### ASHLEY DANIELLE SIEBERT, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. MA1659378**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Evans
Opinion by Justice Partida-Kipness

Appellant Ashley Danielle Siebert appeals her conviction for Class B misdemeanor driving while intoxicated. Siebert brings six issues on appeal. In her first four issues, Siebert seeks a second abatement of this appeal to obtain additional findings of fact and conclusions of law from the trial court regarding the denials of her motions to suppress. In her fifth issue, Siebert contends the trial court abused its discretion by admitting her post-*Miranda* statements to law enforcement. In her final issue, Siebert argues the trial court abused its discretion by refusing to exclude certain evidence she maintains the State failed to produce until the eve of trial. We

conclude a second abatement is unwarranted here, Siebert has not shown an abuse of discretion regarding admission of her post-*Miranda* statements, and Siebert failed to preserve error regarding the purportedly late-tendered evidence. We affirm the judgment.

## BACKGROUND

In the early morning hours of August 5, 2016, Sergeant Amy Ginger of the Dallas Police Department was on bike patrol in the Central Business District of Dallas when she and her partner responded to a major accident call. Upon arrival, she observed Siebert sitting in the driver's seat of a damaged vehicle and a paramedic attending to her. The vehicle was facing the wrong way on a one-way street, was straddling the curbs of the median, and had severe undercarriage damage, a flat front right tire, and a broken windshield. The driver's airbag had deployed, which lead Sergeant Ginger to conclude Siebert had "struck something solid at a relative high rate of speed." After the paramedic completed his evaluation of Siebert, Sergeant Ginger approached and asked Siebert to exit the vehicle. Siebert informed Sergeant Ginger that she was "okay," was coming from Gexa Energy Pavilion, was alone in the vehicle, and no other vehicles were involved in the collision.

Sergeant Ginger testified that when Siebert exited the vehicle, she had unsteady balance, "seemed a little disoriented" during questioning, and had an odor of an alcoholic beverage on her breath. Based on her observations, Sergeant Ginger thought Siebert might be intoxicated and asked dispatch to send an officer to

administer standardized field sobriety tests (SFSTs or field tests). Sergeant Ginger remained at the scene and observed the administration of the SFSTs.

Officer Min An was dispatched to administer the field tests. This was only the second time in his career that Officer An had administered SFSTs. Officer An had Siebert perform multiple field tests on scene before and after her vehicle was towed away. Officer An placed Siebert under arrest on scene and transported her to the Lew Sterrett Justice Center, where Siebert was taken to the intoxilyzer room to give a breath sample to determine her blood alcohol content (BAC).

Although Officer An decided to arrest Siebert half-way through the field sobriety testing and questioned Siebert on scene, neither he nor any of the other five officers on scene provided Siebert with *Miranda* warnings until after she arrived at the Lew Sterrett Justice Center and was taken into the intoxilyzer room. She did not receive *Miranda* warnings when she was arrested on scene or at any time during the transport from the scene to the jail. The trial court excluded evidence of the on-scene, pre-*Miranda* custodial interrogation by Officer An at trial but denied Siebert's motion to suppress the post-*Miranda* interrogation.

In the intoxilyzer room, Sergeant Ginger read Siebert the statutory warnings regarding the breath test, which advised Siebert of her rights regarding the test, the consequences if the result showed a BAC over the legal limit of .08, and the consequences for refusing to consent to the test. Siebert said she would voluntarily give a breath sample, but the officer administering the test was unable to obtain a

sufficient breath sample from Siebert. Dallas Police Department Officer Robert Wilcox operated the intoxilyzer on Siebert. He testified that, in his opinion, Siebert was playing the system and not giving enough effort to give a proper sample. Officer Wilcox took the failed test as a refusal.

Due to the failed breath test, Sergeant Ginger obtained a search warrant for a blood draw. Siebert was transported to Parkland Hospital, and the blood draw occurred at 6:15 a.m., three hours after Officer An originally arrived at the scene of the collision. Brittany Welch, a toxicology chemist at the Southwestern Institute of Forensic Sciences, conducted the toxicology analysis on Siebert's blood. Siebert's BAC at the time of the blood draw was .198 grams of ethanol per 100 milliliters of blood. Welch testified that a result of .198 for a 135-pound female would represent approximately five to six standard drinks fully absorbed into her system at that time. She stated that an individual with a .198 blood alcohol concentration could not safely operate a motor vehicle.

While waiting the statutorily-required fifteen minutes before giving the breath test, Officer Wilcox read Siebert her *Miranda* rights. After receiving the *Miranda* warnings, Siebert nodded her head to indicate that she understood her rights as Officer Wilcox read them to her, and said she wanted to "go forward" when asked if she wanted to waive her rights and answer Officer Wilcox's questions. Officer Wilcox then stated he did not understand what she meant by wanting to go forward, and the following exchange occurred:

–4–

Officer Wilcox: Do you want to answer some questions and waive your rights, and answer some questions for me about what happened tonight, or do you just want to —

Siebert: Answer questions —

Officer Wilcox: You do?

Siebert: Yeah.

Officer Wilcox: So you want to waive your rights to answer questions.

Siebert: Yeah, I guess.

Officer Wilcox then told Siebert that if she does not feel comfortable answering a question, she could tell him no at any time and could stop the interview at any time. Siebert stated she understood that information.

Officer Wilcox then interviewed Siebert and obtained the following information from her: she was driving the motor vehicle that evening, the vehicle she was driving belonged to her, she was the only person in the vehicle, she was coming from a concert at the Gexa Energy Pavilion, and she was heading home to North Richland Hills at the time officers came in contact with her. Siebert also told Officer Wilcox she did not think she was in an accident that evening and was not injured. She stated that she last ate around 6:00 p.m. and admitted to drinking two rum and Cokes between 7:30 p.m. and 9:00 p.m. Officer Wilcox also asked Siebert to perform two field tests because he did not see her perform the field tests on scene. The first was to recite the alphabet from "C" to "T," which she was able to do. The second test was to count backward from 38 to 22, which Siebert performed but stopped at 27. Following these tests, Officer Wilcox attempted to obtain the breath

sample, which failed. Siebert refused to voluntarily provide a blood sample and, as discussed above, Sergeant Ginger obtained the necessary warrant, and Siebert was transported to Parkland Hospital for the blood draw.

Siebert moved to suppress her post-*Miranda* statements, arguing that officers engaged in a deliberate "question-first warn-later" strategy in order to obtain a confession. The trial court denied the motion to suppress. After the jury was selected but before opening statements, Siebert also moved to suppress certain evidence disclosed by the State the evening before trial, which prosecutors received from Sergeant Ginger after the trial court recessed at the end of the first day of trial. Specifically, Sergeant Ginger told prosecutors that the arrival time listed on the 911 call sheet was incorrect. She attributed the discrepancy to dispatcher error caused by a lack of GPS device on her road bike. She also said that when she first arrived on scene, she asked Siebert a series of questions after the paramedic finished treating Siebert, and, in response, Siebert informed Sergeant Ginger that she was "okay," was coming from Gexa Energy Pavilion, was alone in the vehicle, and no other vehicles were involved in the collision. The trial court denied Siebert's motion to suppress Sergeant Ginger's evidence.

The jury found Siebert guilty of misdemeanor driving while intoxicated, and the trial court assessed punishment at 180 days in the Dallas County jail probated for eighteen months with a $500.00 fine. This appeal followed.

# ANALYSIS

Siebert raises six issues on appeal. In issues one through four, she seeks a second abatement to obtain additional findings of fact and conclusions of law from the trial court regarding its rulings on Siebert's motions to suppress. In issues five and six, Siebert seeks a new trial based on the allegedly erroneous admission of evidence at trial.

## A.     Adequacy of Findings of Fact and Conclusions of Law

In her first four issues, Siebert argues the trial court did not make all necessary findings regarding her motions to suppress evidence and asks this Court to abate the appeal for the trial court to issue additional findings. Siebert filed two motions to suppress. In one motion, she sought to suppress her pre-*Miranda* and post-*Miranda* statements. Regarding the post-*Miranda* statements, Siebert argued the officers engaged in a deliberate and prohibited "question-first warn-later" strategy in order to obtain a confession. The trial court suppressed the pre-*Miranda* statements but denied the motion as to her post-*Miranda* statements. In the second motion, Siebert moved to suppress late-tendered evidence. Specifically, Siebert sought to suppress the information the State received from Sergeant Ginger the evening before trial — the incorrect arrival time listed on the 911 call sheet and the four statements made by Siebert to Sergeant Ginger when she first arrived on scene that were not disclosed on Sergeant Ginger's incident report. In each motion, she included the following language:

Finally, should this Honorable Court deny the instant motion, Ms. Siebert respectfully requests the Court to enter specific findings of fact and conclusions of law regarding the Court's ruling. *See State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006) (mandating trial courts enter essential findings and conclusions upon request of a non-prevailing party following a suppression hearing).

When no written findings of fact or conclusions of law were included in the appellate record, Siebert moved to abate this proceeding. We granted the motion, abated the appeal, and remanded the case for the trial court to prepare and file findings of fact and conclusions of law on the two motions to suppress.

The trial court's June 7, 2019 response to this Court's abatement order did not address either of the motions to suppress. The trial court's June 20, 2019 response, however, set out the following findings regarding the court's denial of Siebert's motion to suppress her post-*Miranda* statements:

The Trial Court finds and concludes that on October 30, 2018 the Trial Court heard the Defendant's Motion to Suppress Evidence and Granted in Part the Defendant's Motion and suppressed the questions and Defendant's statements made after the Standardized and other Field Sobriety Test [sic] were concluded until the Defendant was Mirandized. The interviewing Officer, once at the jail, asked the Defendant several times, after she was given Miranda warnings, if she was sure she wanted to answer questions. The Officer gave her many opportunities to change her mind. The Court finds and determines the Officer did not give the Defendant Miranda warnings after they were at the jail, in order to cure any error and that it was not error to give the Miranda warnings after the Defendant was at the jail and then ask her questions related to her arrest. The questions were not asked of the Defendant to trick her or subvert her rights against self-incrimination. The Court gave the Defendant the benefit of the doubt and suppressed the questions and statements after the Officer reached the decision point to arrest until the Defendant was Mirandized.

The trial court did not, however, issue written findings addressing Siebert's motion to suppress late-tendered evidence. Siebert maintains she cannot properly present her case on appeal without additional findings from the trial court as to the denial of both motions to suppress. We disagree.

We review findings to determine if they are inadequate under *State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006), which requires the trial court, on the request of the losing party on a motion to suppress, to state its essential findings. *Id.* at 699. Essential findings are those "findings of fact and conclusions of law adequate to provide an appellate court with a basis on which to review the trial court's application of the law to the facts." *Id.* A trial court's findings on a motion to suppress may be written or oral. *Id.* Findings are inadequate when they are so incomplete an appellate court is unable to make a legal determination regarding a dispositive issue. *High v. State*, No. 05-15-00074-CR, 2016 WL 4123661, at *3 (Tex. App.—Dallas July 29, 2016, no pet.) (mem. op., not designated for publication) (citing *State v. Saenz*, 411 S.W.3d 488, 495 (Tex. Crim. App. 2013)); *see also* TEX. R. APP. P. 44.4(a). To that end, the Court of Criminal Appeals explained in *State v. Elias* that adequate and complete findings are those "covering every potentially dispositive issue that might reasonably be said to have arisen in the course of the suppression proceedings." 339 S.W.3d 667, 676 (Tex. Crim. App. 2011) (whether appellee activated his turn signal within a hundred feet of the intersection was potentially dispositive of the legality of his initial detention and

was, therefore, an essential finding requiring remand to obtain). When a trial court omits properly requested findings or provides inadequate findings, the remedy available to appellate courts is to remand the cause to the trial court for supplemental findings of fact and conclusions of law under rule 44.4 of the Texas Rules of Appellate Procedure. *Cullen*, 195 S.W.3d at 698–99; *Elias*, 339 S.W.3d at 676.

In our examination of whether the trial court met these standards, we must resolve what essential facts the trial court was required to establish. *State v. Adams*, 454 S.W.3d 38, 43 (Tex. App.—San Antonio 2014, no pet.) (citing *Elias*, 339 S.W.3d at 676). We first turn to the order denying suppression of Siebert's post-*Miranda* statements.

### 1.    Post-*Miranda* statements

It is undisputed that Siebert did not receive *Miranda* warnings until Officer Wilcox read the *Miranda* rights to her in the intoxilyzer room at the Lew Sterrett Justice Center following her arrest. Siebert argued in her motion to suppress that her post-*Miranda* statements must be suppressed because the officers on scene engaged in a deliberate "question-first-warn-later strategy" also known as two-step questioning. A "two-step" or "question first, warn later" interrogation occurs when the police interrogate a suspect without giving her *Miranda* warnings, obtain a confession from her, then give the suspect *Miranda* warnings and get her to repeat the previously-made confession after the officers have cured the prior failure to *Mirandize* the suspect. *Missouri v. Seibert*, 542 U.S. 600, 604 (2004); *Carter v. State*,

309 S.W.3d 31, 37–38 (Tex. Crim. App. 2010). In her motion, Siebert stated that she "does not suggest" that Officer An "intentionally violated *Miranda's* requirements." Rather, Siebert argued Officer An "was not properly trained," was an officer who "lacked basic *Miranda*-rights knowledge," and was simply "an inexperienced officer who was in over his head regarding basic DWI investigation and enforcement requirements." Siebert instead argued her post-*Miranda* statements must be suppressed due to the flagrant misconduct of the "horde of Dallas officers" who witnessed but did not remedy Officer An's failure to *Mirandize* Siebert at the scene.

Siebert's counsel made similar arguments at the suppression hearing, which took place outside the presence of the jury during Officer An's testimony. At that time, the trial court heard the arguments of counsel, and both defense counsel and the trial judge questioned Officer An. Defense counsel argued the post-*Miranda* statements should be suppressed because "once they get [Siebert] to the station, almost the exact same questions are asked again post-Miranda. And case law says you can't cure -- you can't ask the same questions again. I'll rephrase. You can't ask the questions, try to cure it by giving Miranda later, and then asking again." The trial judge told counsel she was not going to suppress statements made after Siebert was given *Miranda* warnings unless there was evidence that Siebert invoked her right to counsel, indicated she did not understand her rights, or otherwise showed her statements were involuntary. Defense counsel responded that Siebert did not unequivocally waive her rights because when asked if she wanted to waive her right

to answer questions, her response was "Yeah, I guess." The trial court verbally denied the request to suppress the post-*Miranda* statements and signed a written order granting in part and denying in part the motion to suppress. On appeal, Siebert complains only that the post-*Miranda* statements were the result of two-step questioning. She does not appeal the trial court's implicit ruling that she voluntarily waived her right to answer questions.

The central question when determining the admissibility of post-*Miranda* statements under the circumstances alleged here is whether the evidence shows that the officer deliberately employed a two-step "question first, warn later" interrogation technique to circumvent the suspect's *Miranda* protections. *Carter*, 309 S.W.3d at 38. The essential finding the trial court was required to make to meet the requirements of *Cullen* and *Elias*, therefore, was whether there was evidence of deliberate police misconduct through the use of two-step questioning designed to circumvent *Miranda*. *See, e.g.*, *Juarez v. State*, No. 05-12-00125-CR, 2013 WL 3957008, at \*6–7 (Tex. App.—Dallas July 31, 2013, pet. ref'd) (not designated for publication).

Here, although the trial court's June 20, 2019 findings do not specifically use the words "deliberate," "two-step questioning," or "question first, warn later," the findings address every potentially dispositive issue. The trial court found that (1) the officer did not give the *Miranda* warnings in order to cure any error from the failure to *Mirandize* Siebert on scene, and (2) the post-*Miranda* questions were not asked

–12–

to trick Siebert or subvert her rights against self-incrimination. The trial court also concluded it was not error to (1) give the *Miranda* warnings after Siebert was at the jail and (2) ask Siebert questions related to her arrest after giving the *Miranda* warnings. Finally, the trial court made findings that would support the legal conclusion that Siebert voluntarily waived her *Miranda* rights; namely, that the "interviewing Officer" (i.e., Officer Wilcox) asked Siebert several times, after she was given *Miranda* warnings, if she was sure she wanted to answer questions and gave Siebert many opportunities to change her mind. Those findings are adequate under *Cullen* and *Elias* because they are not so incomplete that we cannot use them to conduct our review of the dispositive legal question presented on appeal: whether Officer Wilcox deliberately employed a two-step "question first, warn later" interrogation technique to circumvent Siebert's *Miranda* protections. *See Carter*, 309 S.W.3d at 38. From those findings and a review of the complete clerk's record and reporter's record, we can address Siebert's legal challenge to the trial court's denial of her motion to suppress her post-*Miranda* statements.

Siebert also argues the June 20, 2019 findings are deficient because they do not include nine specific findings and conclusions she asked the trial court to make after receiving the June 20 findings. Siebert requested the trial court make findings of fact and conclusions of law "related to the following":

- the credibility of each trial witness;

- whether the post-warning custodial interrogation was substantively similar to the subsequent post-warning custodial interrogation;

- whether Ms. Siebert's circumstances at the scene when being questioned were substantially similar to her circumstances at the police station during her second custodial interrogation;

- whether any officers at the scene should have realized *Miranda* warnings were required;

- whether the extensive questioning of Siebert on scene without the benefit of *Miranda* warnings while officers observed constituted improper police conduct;

- the legal impact of the officers' use of a question-first strategy at the scene;

- whether the failure to issue timely *Miranda* warnings can be cured where the subsequent warnings did not include any additional warning regarding the likely inadmissibility of the already obtained pre-warning statements;

- whether case law pertaining to mid-stream *Miranda* warnings applies to this case's facts; and

- whether *Missouri v. Siebert*, 124 S.Ct. 2601 (2004) applies to this case's facts.

The trial court was not required to make the specific, granulated findings and conclusions requested by Siebert because those findings and conclusions are not essential. As discussed above, the essential findings necessary for appellate review of the order denying the motion to suppress the post-*Miranda* statements is whether the evidence shows that the officer deliberately employed a two-step "question first, warn later" interrogation technique to circumvent the suspect's *Miranda* protections. *See Carter*, 309 S.W.3d at 38. The June 20, 2019 findings address those essential

–14–

findings and, while the nine findings Siebert requested would provide further support for the ruling, such findings are unnecessary for this Court's review of Siebert's appellate issue related to the admission of her post-*Miranda* statements.

On this record, we conclude the trial court provided adequate findings regarding the denial of the motion to suppress Siebert's post-*Miranda* statements.

### 2. Late-Tendered Evidence

We next look at the lack of written findings regarding the denial of the motion to suppress late-tendered evidence. Neither a second abatement nor a reversal is necessary to obtain findings related to the order denying suppression of Sergeant Ginger's evidence because Siebert's appellate complaints regarding that ruling were not preserved for review.

In her sixth appellate issue, Siebert argues that the late-tendered evidence violated *Brady v. Maryland*, 373 U.S. 83 (1963), article 39.14 of the Texas Code of Criminal Procedure (the Michael Morton Act), and the trial court's purported ruling that all evidence be turned over to the defense ten days before trial. To preserve each of these alleged errors, however, Siebert was required to seek a continuance below, which she did not do. *See Guerrero v. State*, No. 05-17-00238-CR, 2018 WL 6039647, at *1 (Tex. App.—Dallas Nov. 19, 2018, no pet.) (mem. op., not designated for publication) (where there has been a delayed disclosure of *Brady*

–15–

evidence, the failure to request a continuance waives any *Brady* violation)[1]; *Ray v. State*, No. 10-17-00394-CR, 2018 WL 4926215, at *6 (Tex. App.—Waco Oct. 10, 2018, pet. ref'd) (mem. op., not designated for publication) (just as a defendant's failure to request a continuance waives any *Brady* violation, a defendant's failure to request a continuance also waives any violation under Article 39.14(h)); *Barrientos v. State*, No. 05-14-00041-CR, 2015 WL 1089670, at *4 (Tex. App.—Dallas Mar. 10, 2015, no pet.) (mem. op., not designated for publication) (to preserve error regarding the State's willful withholding of evidence in violation of a discovery order, the defendant must request a continuance of the trial) (citing *Duff–Smith v. State*, 685 S.W.2d 26, 32 (Tex. Crim. App. 1985))[2]. Because these issues were not preserved for appellate review, any omitted essential findings are not necessary to the resolution of this appeal.

For these reasons, we overrule Siebert's first four issues.

---

[1] *Perez v. State*, 414 S.W.3d 784, 790 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Taylor v. State*, 93 S.W.3d 487, 502 (Tex. App.—Texarkana 2002, pet. ref'd); *see also Valdez v. State*, No. AP-77,042, 2018 WL 3046403, at *11 (Tex. Crim. App. June 20, 2018), cert. denied, 139 S. Ct. 595, 202 L. Ed. 2d 428 (2018) ("A defendant's failure to request a continuance when *Brady* evidence is disclosed at trial arguably waives his complaint that the State has violated *Brady* and suggests that the tardy disclosure of the evidence was not prejudicial to him." ) (citing *State v. Fury*, 186 S.W.3d 67, 73–74 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd), and *Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. 1982) ("The failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise.")).

[2] *See also Massimo v. State*, 144 S.W.3d 210, 215 (Tex. App.—Fort Worth 2004, no pet); *Taylor*, 93 S.W.3d at 502; *Oprean v. State*, 201 S.W.3d 724, 730 n. 10 (Tex. Crim. App. 2006) (Cochran, J., concurring) (noting that "the trial court may always exclude the undisclosed evidence, but if he does not, any error in causing 'surprise' to the defense is forfeited on appeal unless the defendant has also requested a postponement or recess.").

**B.      Admission of Post-*Miranda* Statements**

In her fifth issue, Siebert contends the trial court erred by admitting her post-*Miranda* statements. She maintains the statements were tainted by earlier unlawful custodial questioning at the scene before officers gave her *Miranda* warnings. As discussed above, "two-step" or "question first, warn later" interrogation occurs when the police interrogate a suspect without giving her *Miranda* warnings, obtain a confession from her, then give her the *Miranda* warnings, and get her to repeat the confession she made previously. *Seibert*, 542 U.S. at 604. The deliberate employment of such a tactic is impermissible in Texas. *Hill v. State*, No. 05-15-00989-CR, 2017 WL 343593, at *2 (Tex. App.—Dallas Jan. 18, 2017, pet. ref'd) (mem. op., not designated for publication) (citing *Carter*, 309 S.W.3d at 38; *Martinez v. State*, 272 S.W.3d 615, 624 (Tex. Crim. App. 2008)). The central question when determining the admissibility of post-*Miranda* warning confessions made after *Miranda* violations is whether the evidence shows that the officer deliberately employed a two-step "question first, warn later" interrogation technique to circumvent the suspect's *Miranda* protections. *Juarez*, 2013 WL 3957008, at *6–7.

Whether the two-step questioning strategy was deliberate hinges on the interrogating officer's subjective intent. *Carter*, 309 S.W.3d at 39. When the officer testifies at a hearing on a motion to suppress, the officer's demeanor and testimonial evidence "are especially relevant to a deliberateness determination." *Id.* at 40. Thus,

when the trial court, after having the chance to observe the officer's testimonial evidence and demeanor, has made an explicit factual finding regarding the deliberateness of the strategy, a reviewing court must employ a highly deferential standard of review and may reverse only upon a showing of abuse of discretion. *Id.* at 42. The Court of Criminal Appeals described this "highly deferential review" as similar to the *Guzman* standard, under which appellate courts should afford almost total deference if the resolution of an ultimate question turns on an evaluation of credibility and demeanor. *Id.* at 39–40 (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). In applying this standard, we must give "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Guzman*, 955 S.W.2d at 89. We afford the same level of deference to a trial court's ruling on "application of law to fact questions," or "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 n. 20 (Tex. Crim. App. 2007). We review de novo "mixed questions of law and fact" that do not depend upon credibility and demeanor. *Id.* at n.21. "Unless the trial court abused its discretion by making a finding not supported by the record, we will defer to the trial court's fact findings and not disturb the findings on appeal." *Gette v. State*, 209 S.W.3d 139, 142 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991)).

At the suppression hearing, Siebert did not present Officer Wilcox as a witness and did not offer either the video from the intoxilyzer room or of the on-scene questioning of Siebert by Officer An to support the motion to suppress. Nor did defense counsel argue in the motion to suppress or at the hearing that Officer An or Officer Wilcox deliberately employed a two-step "question first, warn later" interrogation technique to circumvent Siebert's *Miranda* protections. Rather, defense counsel argued that the post-*Miranda* statements should be suppressed because the officers on scene allowed Officer An to question Siebert without giving her *Miranda* warnings and cannot cure that conduct by asking the same questions again at the jail.

In overruling Siebert's motion to suppress, the trial judge found that Officer Wilcox did not give Siebert *Miranda* warnings at the jail in order to cure any error, and that his questions were not asked of Siebert to trick her or subvert her rights against self-incrimination. Those findings are supported by the record at the time of the suppression hearing because Siebert presented no argument or evidence at that time that Officer Wilcox or Officer An, the two officers who questioned Siebert, acted with subjective deliberateness. Those findings were then buttressed by Officer Wilcox's testimony at trial and the video of his entire interaction with Siebert in the intoxilyzer room, which was admitted into evidence and shown to the court and jury in its entirety. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007) ("when the parties subsequently re-litigate the suppression issue at the trial on the

–19–

merits, we consider all evidence, from both the pre-trial hearing and the trial, in our review of the trial court's determination").

Applying the appropriately deferential standard of review, we conclude that the record supports the trial judge's finding that the officers did not engage in deliberate police misconduct designed to circumvent *Miranda*. *See, e.g., Carter*, 309 S.W.3d at 41; *see also Juarez*, 2013 WL 3957008 at \*7. Had the trial court not made express factual findings as to whether officers deliberately employed a "question first, warn later" technique, we would imply fact findings that support the trial court's ruling so long as the evidence supports those implied findings. *See Gutierrez*, 221 S.W.3d at 687. Either way, on this record, we conclude the trial court did not err by denying Siebert's motion to suppress her post-*Miranda* statements. *See Carter*, 309 S.W.3d at 40. We overrule Siebert's fifth issue.

## C.    Admission of Late-Tendered Evidence

In her final issue, Siebert complains the trial court abused its discretion by failing to suppress evidence received from the State the night before trial. This evidence consisted of new information received by the prosecutor from Sergeant Ginger. The evening before trial, the prosecutor informed defense counsel by e-mail that Sergeant Ginger's arrival time in the 911 call sheet was incorrect, and that Siebert had made four statements to Sergeant Ginger that were not included in Sergeant Ginger's disclosed incident report. Siebert moved to suppress this evidence, arguing the late-tendered information violated *Brady*, the Michael Morton

–20–

Act, and the trial court's discovery order. The trial court denied the motion to suppress.

As we addressed in our discussion of Siebert's first four issues, Siebert was required to seek a continuance from the trial court to preserve error on these alleged violations. She did not request a continuance and, as such, waived each ground argued regarding the denial of her motion to suppress late-tendered evidence. Accordingly, we overrule her sixth and final issue.

## CONCLUSION

We conclude abatement is unwarranted here, the trial court did not abuse its discretion by admitting Siebert's post-*Miranda* statements, and Siebert waived her complaints regarding the denial of the motion to suppress late-tendered evidence. Accordingly, we overrule Siebert's appellate issues and affirm the judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2
181386F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ASHLEY DANIELLE SIEBERT,
Appellant

No. 05-18-01386-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 6, Dallas County, Texas Trial Court Cause No. MA1659378. Opinion delivered by Justice Partida-Kipness. Justices Nowell and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 16th day of September, 2020.